**Robert J. DOWNES, Plaintiff–Appellee,**

v.

**VOLKSWAGEN OF AMERICA, INC., Defendant–Appellant.**

No. 93–3758.

United States Court of Appeals, Seventh Circuit.

Submitted Dec. 7, 1993 *.

Decided Dec. 2, 1994.

* After hearing argument in this case on October 27, 1993 as No. 93–1639, the panel determined that it suffered from an absence of finality and remanded it to the district court for entry of a final decision. The case was renumbered as No. 93–3758 and reassigned to this panel December 7, 1993 for decision without further argument.

1134

L. Steven Platt, Arnold & Kadjan, Chicago, IL, for plaintiff-appellee.

Linzey D. Jones, Jr., Scott E. Gross, Sidley & Austin, John W. Norris, Byrdges, Riseborough, Morris, Franke & Miller, Chicago, IL, Steven C. Berry, Franklin, Bigler, Berry & Johnston, Troy, MI, for defendant-appellant.

Before WOOD, Jr., CUDAHY and EASTERBROOK, Circuit Judges.

CUDAHY, Circuit Judge.

This appeal arises from Downes' suit against his former employer, Volkswagen of America (VW), alleging willful age discrimination and retaliation under the Age Discrimination in Employment Act (ADEA), 29

U.S.C. §§ 621–634. The district court denied VW's motion for summary judgment, holding that, viewing the facts in a light most favorable to Downes, the intake questionnaire Downes filed with the Equal Employment Opportunity Commission (EEOC) satisfied ADEA's charge-filing requirement.[1] Subsequently, despite the fact that a jury determined that VW had not acted willfully, it found in favor of Downes and awarded him back pay of $108,500, an amount roughly equivalent to Downes' salary and benefits for one year beyond his severance pay period. In addition, the court awarded three years' front pay, prejudgment interest and reimbursement for certain costs (including attorney travel expenses). The court subsequently denied VW's motion for relief from judgment, j.n.o.v. or a new trial. We affirm in part and reverse in part.

## I.

Downes, a sixty-year-old white male, worked for VW for over 25 years, holding various sales and management positions and ascending eventually to the rank of Midwest Zone Manager. During his tenure, Downes received substantial pay raises, regular performance bonuses and above average performance evaluations. The record reflects that Downes never received any negative feedback on his performance prior to June of 1989. On June 22, 1989, however, Downes was informed by VW vice president Bill Young that he would be terminated and replaced by an employee fifteen years younger. The terms of the termination made it effective one year later, on July 1, 1990, at which time Downes' one year of severance pay would commence. Until then, Downes could remain at VW to work as a consultant on "special projects."

Despite VW's policy of giving a written explanation of the grounds for an employee's termination, Young did not, according to Downes, offer any specific reasons why VW decided to demote and terminate him. Tr. 116–17, 456–57, 459–62. In particular, Downes testified that he was not, at the time he was informed of VW's move, also told that he was being terminated as part of any workforce reduction. Tr. 204. Moreover, Young did not respond to Downes' suggestion that VW wanted to terminate him because of his age. Tr. 117. After repeated requests, however, Downes did receive a written explanation for VW's actions, which purportedly resulted from "a corporate-wide reduction in force and a pressing need to improve performance in the field to insure [VW's] continued presence in the automotive marketplace." Pl's Ex. 151. But this general explanation came nearly a year after Downes' demotion and VW offered no further written explanation until this suit was commenced. Testimony by both Downes and Young suggests that the standards used in deciding to terminate Downes varied from those VW historically had used and, in any event, there is no evidence that the termination standards were ever communicated to Downes prior to June of 1989. Tr. 159–69, 170, 395–96, 404–05, 485–87.

During the months following Downes' demotion and notice of termination, he spoke frequently with Young about continuing with the company. Tr. 127–28, 131–32. As the district court noted, the general tone of these conversations focused on the reasons for the removal of Downes as Midwest Zone Manager, his new responsibilities as a consultant and the possibility of extending his employment with VW. Downes testified that Young told him that Young was quite certain that he could have VW extend Downes' employment. Tr. 131. Ultimately, however, Young informed Downes that Guy Mollet, a VW personnel director, had disapproved the request. Tr. 131, 425–26. Downes then contacted Mollet and met with him in April of 1990 to discuss the reasons for his termination, at which time Mollet commented that "[VW] is a young company." Tr. 132. Downes persuaded Mollet to reconsider but, on April 11, 1990, Mollet told Downes that VW would not extend his employment. *Id.* at 133. VW's workforce reduction and restructuring ultimately led to the elimination of three Zone Manager positions. However, the record (1) indicates that Young did not know when,

---

**1.** Downes also moved for summary judgment on his claim in general, but the district court denied the motion. Since Downes does not contest this ruling, we will not discuss it further.

precisely, the three Zone Manager positions were eliminated, ROA Doc. 150—Weidman at 71; (2) includes evidence that at least one of the three zone managers was not fired when his zone was eliminated, Joint Ex. 15; and (3) includes evidence that Downes' old position of Midwest Zone Manager continued in existence through the time of trial, Tr. 276–78, 288, 294, 297; ROA Doc. 150—Weidman at 5, 12, 73.

Downes contends, based in part on Mollet's "young company" remark and the comments of another personnel director, that VW terminated him because of his age.[2] VW claims that Young did not involve Mollet and the other personnel director in the decision to terminate Downes, but there appears to be substantial evidence to the contrary.[3] Moreover, VW contends that application of the new performance standards indicated that Downes had an aloof and dictatorial management style, which posed a barrier to VW's new, customer-oriented approach to business.

In April 17, 1990, Downes completed a form labelled "Intake Questionnaire" for the EEOC. He told the agency that he had asked VW for an additional year of paid employment but there is some dispute as to whether Downes told the intake officer that he would return to file a "Charge of Discrimination" form if VW denied this request. When his negotiations for one extra year of employment proved unsuccessful, Downes returned to the EEOC, on July 26, 1990, to file an age discrimination charge form. The EEOC then notified VW that Downes had filed an age discrimination charge. The charge eventually formed the basis for a three-count complaint filed in district court. The complaint alleged that VW discriminated against Downes when he was relieved of his duties as Midwest Zone Manager (Count I); that VW retaliated against Downes for filing a discrimination charge in September 1990 when it ordered him to vacate his office (Count II); and that VW's conduct was willful (Count III). Other facts will be related as the need arises.

## II.

### A. Denial of Summary Judgment

■ VW based its summary judgment motion entirely on the contention that, since Downes did not file an age discrimination charge form until July of 1990, he failed to file a "charge" of age discrimination within the 300–day ADEA limit. See 29 U.S.C. § 626(d)(2). The trial court denied that motion because it determined that Downes' EEOC intake questionnaire constituted an age discrimination charge.[4] On appeal, VW contends that the court erred both in denying the motion and by "precluding" it from presenting evidence that Downes' questionnaire did not constitute a charge.

VW's argument that it was "precluded" from presenting evidence is without merit. The district court denied VW's motion for summary judgment, correctly "reading the facts in a light most favorable to the party opposing summary judgment." Br. Aplt.–App. A at 9. That decision did not necessarily prevent VW from presenting evidence at trial. However, despite VW's assertion that it possessed evidence relevant to whether

2. Downes testified that, at the time his employment status changed, the other personnel director told him that outplacement was unnecessary because no one was going to give a sixty-year-old man a job. Tr. 119. The director denied making the statement.

3. Mollet was, according to Downes, charged with deciding how long Downes would continue with the company. As indicated, Downes alleges that Young attempted but failed to gain Mollet's approval for Downes to work beyond July of 1990. Tr. 425–26. Moreover, there is testimony that Young consulted the other personnel director before terminating Downes. Tr. 417. Young claimed that he did not go into the details of Downes' termination with that director, but only

spoke to him because the director was responsible for establishing the terms of Downes' severance package. Id. at 419. The director in question also testified that he was responsible for ensuring that Downes was treated fairly. ROA Doc. 150—Craig at 28. Further, this director signed the June 1989 letter that set forth the terms of Downes' termination and he was apparently responsible for discussing with Downes how his termination would be implemented.

4. The intake questionnaire argued to be a charge was filed on the 299th day of the limitations period, measured from the time Downes received his first notice that he would be demoted and ultimately terminated.

Downes' questionnaire constituted a charge, it made no effective effort to present this evidence to the trier of fact.[5] Because VW neither attempted to present evidence, nor objected at an appropriate time to any exclusion of evidence on this issue, it has waived its right to raise this issue on appeal. *See Heller v. Equitable Life Assurance Society of the United States*, 833 F.2d 1253, 1261 (7th Cir.1987) ("if a party fails to press an argument before the district court, he waives the right to present that argument on appeal").

■■■ VW also contends that the district court erred as a matter of law in denying its motion for summary judgment. This court reviews denials of summary judgment *de novo. Martin v. Garman Construction Co.*, 945 F.2d 1000, 1003 (7th Cir.1991). We have declined to interpret the charge-filing requirement of § 626(d)(2) in a way that would hold persons to elaborate pleading requirements or that would let the form of the purported charge prevail over its substance. *Steffen v. Meridian Life Ins. Co.*, 859 F.2d 534, 542–44 (7th Cir.1988) (holding that intake questionnaire nonetheless constituted a "charge" under ADEA); *see also Philbin v. General Elec. Capital Auto Lease, Inc.*, 929 F.2d 321, 324–25 (7th Cir.1991). Rather, we have construed § 626(d)(2) so as to effect the broad remedial purposes of the Act. "The purpose of the charge-filing requirement is to provide the EEOC with sufficient information to notify an employer that it has been charged with discrimination and to provide the EEOC with the opportunity to investigate the alleged unlawful practice as well as to provide the EEOC with the opportunity to eliminate any unlawful practice through informal conciliation." *Steffen*, 859 F.2d at 542. In order to constitute a charge, notice to the EEOC must be of a kind that would

convince a reasonable person that the plaintiff manifested an intent to activate the Act's machinery. *Id.* In assessing whether the plaintiff manifested such intent, the district court may consider, *inter alia*, whether the questionnaire is precise enough to identify the parties and generally describe the complained-of practices and whether the information in the questionnaire was subsequently used to complete the formal charge. *Philbin*, 929 F.2d at 324; *Steffen*, 859 F.2d at 542–44. Further, while it is relevant that the EEOC *treated* the questionnaire as a charge, we have also held that inaction by the EEOC should not, for time limit purposes, bar an ADEA suit. *Steffen*, 859 F.2d at 542–44.

■■ Here, the EEOC failed to assign a charge number to Downes' case, process his charge, investigate his allegations or notify VW. Moreover, the intake officer made a written notation that Downes would return to file a charge if VW refused Downes' counterproposal that VW extend his employment. ROA Doc. 22—Ex. C (Ex. 2). However, the intake officer could not recall whether Downes had actually said that he would return or that he did not want the EEOC to act immediately. The intake officer also acknowledged that people who fill out intake questionnaires generally intend to file discrimination complaints. Bruce Dep. 9, 17. Downes' deposition indicates that he believed he had done everything possible to commence an action against VW, and he denied telling the intake officer that he would complete filing a charge only if VW refused a counteroffer. Downes Dep. at 199–203. His efforts were sufficient to induce the intake officer in his interview notes, to occasionally refer to Downes as a "CP" or "charging party." ROA Doc. 22—Ex. C at 7–8. The information that Downes provided on the

---

5. The transcript discloses some rather vague comments by VW's counsel (Mr. Berry) about the possibility of pursuing evidentiary issues, but VW did not seek to present evidence and in effect waived any such effort, as follows:

Mr. Meyer [Downes' counsel]: I think the trial also will be shortened if there is a clear understanding of some of the eliminations of the issues. We believe that the summary judgment decision took out the limitations period, although it appears in the pretrial order that the defendant is resurrecting that. There are wit-

nesses that would be attendant to that issue which would not be necessary if you agree that that issue is no longer in the case.

Mr. Berry: My understanding is that [the question of whether the questionnaire constitutes a charge] is not in the case in terms of the trial. I think you [the court] did dispose of it summarily, but for the purposes of the record, I included it in the trial brief. I don't think I listed any witnesses that address that. In fact, I have not.

Tr. at 9.

intake questionnaire identified himself and VW and adequately alleged VW's discriminatory acts against him. Indeed, this information was substantially the same as that Downes provided on the "charge of discrimination" form, which was concededly a "charge" under the Act. Taking the facts in a light most favorable to Downes, a reasonable person could conclude that Downes manifested an intent to activate the Act's machinery. The EEOC's failure to understand and to act upon Downes' intent—while tending to argue against finding that the questionnaire was a charge—are not, under *Steffen*, conclusive.[6] Since we hold that the district court correctly concluded that the intake questionnaire constituted a charge, we need not consider Downes' argument that equitable principles also provide support for the denial of summary judgment. VW's motion for summary judgment was properly denied.

### B. Denial of VW's Post–Trial Motion

After the jury verdict in favor of Downes, VW moved for judgment as a matter of law or, in the alternative, for a new trial. In the same motion, VW also moved for relief from the judgment. VW based all three aspects of its motion on the same four grounds: that the verdict was against the great weight of the evidence; that the verdict and jury award were inconsistent; that the verdict was procured through fraud; and that the action was barred by the statute of limitations. The district court rejected the consolidated motions in full.

 With respect to the denial of j.n.o.v., we review the district court's ruling de novo. *Aungst v. Westinghouse Elec.*

*Corp.*, 937 F.2d 1216, 1219 (7th Cir.1991), *criticized on other grounds, Oxman v. WLS–TV*, 12 F.3d 652, 657 (7th Cir.1993). This requires us to answer at least two questions. First, we must determine whether the arguments contained in the motion were properly preserved in motions for directed verdict. Fed.R.Civ.P. 50(b). Second, we must determine whether there was sufficient evidence for a reasonable jury to find that age was a determining factor in Downes' termination. *Perfetti v. First Nat'l Bank of Chicago*, 950 F.2d 449, 450 (7th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 2995, 120 L.Ed.2d 871 (1992). The evidence must have been substantial—a mere scintilla will not suffice. *Id.*

 Federal Rule of Civil Procedure 50 requires that a directed verdict motion must be made at the close of all evidence. In the past, this and other courts have not applied this rule rigidly, especially where a directed verdict motion was made at the close of the plaintiff's case and no prejudice has resulted to the nonmoving party from the failure to renew. *See, e.g., McKinnon v. City of Berwyn*, 750 F.2d 1383, 1389–90 (7th Cir.1984) (citing cases), *questioned on other grounds, Skelton v. General Motors Corp.*, 860 F.2d 250, 257 (7th Cir.1988); *see also* 9 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2537 (1971). However, Rule 50 was reevaluated and amended in 1991. At that time the Advisory Committee made clear that Rule 50 deliberately "retain[ed] the requirement that a motion for judgment be made prior to the close of the trial, subject to renewal after a jury verdict has been rendered." Fed.R.Civ.P. 50, Notes of Advisory Committee on Rules, 1991 Amendment. The Committee had the opportunity to change the requirements of Rule 50

---

6. The conclusion that a charge was timely filed is bolstered by the fact that there was a fair degree of ambiguity as to when, precisely, the alleged unlawful act—the starting point of the 300–day time period—occurred. The Supreme Court has held that the limitations period in an age discrimination suit begins to run on the date a discharged employee is notified unambiguously that his employment will be terminated. *Delaware State College v. Ricks*, 449 U.S. 250, 257–58, 101 S.Ct. 498, 503–04, 66 L.Ed.2d 431 (1980). Arguably, given Young's repeated assurances that there was a good chance that Downes could continue employment beyond June 30, 1990 (the

ending date of Downes' consultancy), Downes did not receive unambiguous notification until as late as April 11, 1990. That was the date that Downes was informed that VW would no longer discuss his continued employment and that he should consider his termination final. ROA Doc. 40—Ex.D (Mollet Dep.) at 46, 49; ROA Doc. 40—Ex.A (Downes Dep.) 143–44. Thus, even on the theory that no charge was filed until Downes completed a "Charge of Discrimination" form on July 26, 1990, Downes arguably satisfied the charge-filing deadline, since there are only 106 days between April 11 and July 26.

in the 1991 amendments, and declined to do so. Therefore, we follow the plain language of the Rule and affirm the district court's conclusion that VW was precluded from seeking j.n.o.v. because it failed to renew its directed verdict motion at the close of all the evidence.

■■■ Even had VW renewed its directed verdict motion at the end of the trial, however, a decision on the merits would yield the same result. In reviewing the sufficiency of evidence to support a jury verdict, we review the record as a whole. *Castleman v. Acme Boot Co.*, 959 F.2d 1417, 1420 (7th Cir.1992). Downes presented evidence that VW had given him satisfactory performance evaluations and consistent pay raises and that he was terminated based, purportedly, on new performance standards of which he had virtually no notice prior to litigation. In addition, VW employees made comments to him at least suggesting that he was terminated because of his age. Further, the district court observed, on three separate occasions, that the evidence presented by Downes was "substantial." Br. Aplt.—App. A at 14; Br. Aplt.—App. D at 2; Tr. 378. Thus, viewing the record as a whole, the verdict is not against the great weight of the evidence.[7]

■■■ Neither was the verdict inconsistent. *See United States Equal Employment Opportunity Comm'n v. Century Broadcasting Corp.*, 957 F.2d 1446, 1455 (7th Cir.1992) (court required to reconcile verdicts whenever possible). VW contends that the verdict on liability was inconsistent with the jury's damage award, since Downes received only one year's back pay when he had asked for considerably more based on willfulness. This argument is without merit. Having heard evidence from both sides, the jury was not obligated to adopt either Downes' view

that VW discriminated willfully or VW's view that it did not discriminate at all. Rather, it was entirely proper for the jury to find, as it did, that VW discriminated but did not do so willfully.

VW's fraud and statute of limitations arguments also fail. VW's motion contended that Downes knowingly presented an exhibit that falsely represented his performance from 1985 through 1988. Yet, while VW disputed the accuracy of the exhibit and supporting testimony, VW never brought any evidence of fraud to the court's attention, and Downes' testimony on the point appears to be supported by documentary evidence. Further, VW's statute of limitations argument merely recasts its argument—which we have already rejected—that Downes' intake questionnaire was not a timely "charge," as required by the ADEA. Denial of the motion for judgment as a matter of law was proper.

■■■ Applying similar reasoning to the other two aspects of VW's post-trial motion, we conclude that the district court also properly denied VW a new trial or relief from the judgment. First, the denial of a new trial motion is not subject to review by this court, except under exceptional circumstances showing a clear abuse of discretion. We thus consider whether any reasonable court could have ruled as the district court did here. *United States Equal Employment Opportunity Comm'n v. Century Broadcasting Corp.*, 957 F.2d at 1460. For the reasons already indicated, we answer that question in the affirmative. Consequently, it was proper for the district court to deny VW a new trial. Second, VW failed to present evidence that it should be granted relief from judgment on any of the grounds enumerated in Rule 60. *See* Fed.R.Civ.P. 60.

7. In concluding that the verdict was supported by the record as a whole, we do not suggest that the performance standards VW claims it used to terminate Downes were impermissible. An employer may, of course, use any *performance* standards it chooses in evaluating an employee. Rather, we indicate only that, on these facts, a reasonable jury could conclude that VW's stated reasons for terminating Downes were a pretext for impermissibly terminating Downes on the basis of age. *See Perfetti*, 950 F.2d at 457 (inconsistent application of performance criteria pro-

vides basis for inference that explanation involving criteria is pretext for discrimination). Several of the cases on which VW relies are distinguishable; while the employers in those cases terminated the plaintiffs based on new performance criteria, there was no suggestion, as in this case, that the new criteria were established and communicated to the plaintiff well after he was terminated. *See, e.g., Anderson v. Stauffer Chem. Co.*, 965 F.2d 397 (7th Cir.1992); *Aungst*, 937 F.2d at 1216.

## C. *Award of Front Pay*

 The ADEA provides broad remedies to make successful plaintiffs whole. 29 U.S.C. § 626(b); *Tennes v. Mass. Dept. of Revenue,* 944 F.2d 372, 381 (7th Cir.1991). Although reinstatement is the preferred remedy, it is not always appropriate. *McNeil v. Economics Lab., Inc.,* 800 F.2d 111, 118 (7th Cir.1986), *cert. denied,* 481 U.S. 1041, 107 S.Ct. 1983, 95 L.Ed.2d 823 (1987). The court has discretion to grant or deny reinstatement and it may consider a number of factors in exercising that discretion, including hostility in the employment relationship and the lack of an available position to which to reinstate the plaintiff. *Id.; Coston v. Plitt Theatres, Inc.,* 831 F.2d 1321, 1331 (7th Cir.1987), *cert. denied,* 485 U.S. 1007, 108 S.Ct. 1471, 99 L.Ed.2d 700 (1988), *and vacated on other grounds,* 486 U.S. 1020, 108 S.Ct. 1990, 100 L.Ed.2d 223 (1988). The statute also affords the court discretion to award front pay according to the circumstances of each case.[8] In deciding whether to award front pay, the court considers such factors as whether the plaintiff has a reasonable prospect of obtaining comparable employment, whether the time period for the award is relatively short, whether the plaintiff intended to work or was physically capable of working and whether liquidated damages have been awarded. *McNeil,* 800 F.2d at 118–19; *Coston,* 831 F.2d at 1331.

Neither party contests the district court's denial of reinstatement. VW, however, makes various arguments in support of its claim that the district court abused its discretion by awarding Downes three years of front pay, which the district court based on a summary of calculations and handwritten notes purportedly developed by Downes' expert. This material was not entered into evidence during the trial, but was submitted later with Downs' post-trial motion for reinstatement or front pay. VW argues, first, that Downes was required to present evidence to support such an award *at trial* and that he failed to do so.

 VW misstates applicable precedent with respect to the need to adduce front pay evidence at trial. While we will reverse an award of front pay when there is no evidence in the record upon which to predicate such an award, *Hybert v. Hearst,* 900 F.2d 1050, 1055–56 (7th Cir.1990), there is nothing in the cases to suggest that such evidence must be presented *at trial,* so long as the evidence is presented to the district court at some point. The cases on which VW relies do not speak to a timing requirement for presenting evidence, since the plaintiffs in those cases *never* brought forth sufficient evidence to support a front pay award. *See, e.g., Brooms v. Regal Tube Co.,* 881 F.2d 412, 424 n. 9 (7th Cir.1989); *Coston,* 831 F.2d at 1333–35 & n. 6; *see also Fortino v. Quasar Co.,* 950 F.2d 389, 398 (7th Cir.1991) (explicitly rejecting suggestion in *Coston* that jury plays role in determining amount of front pay). Indeed, it would be somewhat incongruous to require evidence of front pay to be presented at trial when the issue of front pay is not, in ADEA cases, before the jury but is the subject of an equitable determination by the court. *Price v. Marshall Erdman & Assocs., Inc.,* 966 F.2d 320, 324 (7th Cir.1992) (quoting *Fortino* ).[9] As such, the determination of front pay is entrusted to the trial court's sound discretion. *See Graefenhain v.*

---

8. This court has defined front pay as "a lump sum ... representing the discounted present value of the difference between the earnings [an employee] would have received in his old employment and the earnings he can be expected to receive in his present and future, and by hypothesis inferior, employment." *McKnight v. General Motors Corp.,* 908 F.2d 104, 116 (7th Cir.1990) (citations omitted), *cert. denied,* 499 U.S. 919, 111 S.Ct. 1306, 113 L.Ed.2d 241 (1991).

9. *Coston,* 831 F.2d at 1321, suggests that the district court in that case was correct to deny front pay because the plaintiff failed to present any evidence of front pay until its "posttrial resurrection of the pretrial memorandum's argu-

ment for front pay." *Id.* at 1333. This conclusion was based, however, on the notion that the jury should play some decisive role in awarding front pay, which we have said *Fortino* explicitly rejects. 950 F.2d at 398. Further, it would presumably not be an abuse of discretion for the court to postpone hearing any evidence concerning front pay until after the trial, since evidence of what a defendant's alleged discrimination would cost a plaintiff in future salary and benefits could confuse or prejudice the jury in its determination of back pay, which should cover only the plaintiff's losses up until the time of trial. *See* Fed.R.Evid. 403.

*Pabst Brewing Co.,* 870 F.2d 1198, 1201 (7th Cir.1989). The court may submit the issue to the jury for advice, but it is not bound by the jury's advisory verdict. *Id.; see also* 9 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2335 (1971). Downes raised the issue of front pay in the complaint and VW discussed the issue in its trial brief. If, after notice of this sort, VW nonetheless considered Downes' post-trial submission of front pay evidence to be prejudicial or a surprise, VW could have requested an evidentiary hearing or additional time to respond to Downes' post-trial motion. VW did neither and instead rested its response to Downes' motion almost exclusively on its erroneous theory that front pay evidence had to be presented at trial and on its arguments (which we reject below) that the front pay award was arbitrary or somehow inconsistent with the jury verdict or the court's factual findings.

■ Second, VW argues that the district court arrived at the front pay amount arbitrarily. But this argument ignores the manner in which the relevant evidence was derived and presented, as well as the very considerable discretion the district court may exercise in considering the question. It is, of course, true that a front pay award must be grounded in available facts, acceptable to a reasonable person and not highly speculative. *Brooms,* 881 F.2d at 424 n. 9; *Graefenhain,* 870 F.2d at 1201, 1213; *Hybert,* 900 F.2d at 1056. Here, the district court based its front pay calculation on estimates derived by one of Downes' experts at trial in the course of his calculations of back pay. Tr. 258–66. The expert was an accomplished actuary and skilled in using the statistical data and techniques necessary to compute projected earnings and present values. The expert based his estimates on financial planning, pension and personnel information provided by VW; conversations with Downes; court documents; and newspaper clippings. The expert apparently collated this information to calculate both back and front pay, considering base salary, bonus and service award, automobile usage, and pension benefits. ROA Doc. 101 at 2–7. The expert then testified as to back pay findings only, specifically discussing the contents of a summary of calculations he had prepared. *Id.* at 2. The figures in this summary appear to be taken directly from handwritten notes and charts, where the expert testified that he had recorded his sources, assumptions and supporting calculations. *Id.* at 2–7. VW cross-examined the expert as to his back pay findings.

■ The district court later used the expert's summary and handwritten notes to make its front pay calculation. *Compare* ROA Doc. 127 at 7 n. 1 *with* ROA Doc. 101 at 2, 5. But while the expert had calculated front pay for eight years (including the year during which front pay was awarded), the district court concluded that Downes was entitled only to three years of front pay. ROA Doc. 127 at 6–7. The court then added in *pro rata* shares of the total automobile expense and pension benefits calculated for front pay purposes. The court awarded only a portion of the front pay calculated by the expert because Downes presented no evidence that he was willing or physically able to work as long as the expert's estimates assumed and because restructuring and troubled times at VW made it particularly speculative that Downes would have remained more than a few years in any event. *Id.* The court concluded that an award of three years front pay "properly balances the need to compensate Downes with the problem of predicting remote events." *Id.* at 7.

■ Given the inherent difficulty of calculating damages for things that might have—but have not, in fact—occurred, we find no abuse of discretion here. The court's front pay award was based on appropriate evidence and reasonably informed estimates. While VW's cross-examination of the Downes' expert was limited to the issue of back pay, VW did have an opportunity at trial to challenge the expert's sources and general methodology, which appear to have been similar for both back pay and front pay. After trial, VW never objected to Downes' evidentiary submissions on the front pay issue, nor did it request an evidentiary hearing on front pay. While the district court's decision to limit the award to three years of front pay is admittedly a rough approach to com-

pensating Downes only for the work he would have done for VW absent the discriminatory termination, the court did not abuse its equitable powers. Additional statistical analysis was not required.[10]

Third, VW suggests that the district court contradicted itself by concluding that Downes was entitled to front pay while also acknowledging (1) that VW had reduced its workforce by sixty percent; (2) that three of seven Zone Manager positions were eliminated; and (3) that VW's restructuring made it speculative that Downes could have stayed with the company as long as his expert's front pay calculations assumed. We see no contradiction among these findings. It is true, of course, that a front pay award may be inappropriate when, because of a company's deteriorating financial condition and ongoing workforce reductions, there is little likelihood that the plaintiff's employment would have continued into the future. *Tennes*, 944 F.2d at 381. Here, however, the district court's findings and the record are entirely consistent with the notion—which the district court apparently adopted—that, had VW not discriminated, Downes would

have remained at the company for two or three years before his job fell victim to restructuring or hard economic times. As indicated, the record discloses that Young did not know when, precisely, the three Zone Manager positions were eliminated, and it includes evidence that at least one of the managers of the three eliminated zones was not fired and that Downes' old position of Midwest Zone Manager existed through the time of trial.[11]

VW argues finally that the jury's back pay award precluded a front pay award because, by awarding only an amount equivalent to one year's back pay when Downes requested more, the jury somehow determined that Downes would not have worked at VW for more than one year beyond his termination date. This argument fails. As indicated, the issue of front pay was not (and, indeed, should not have been) tried to the jury. The jury was instructed only on the issue of back pay. The instruction stated that if VW was found liable, Downes could "prove and recover damages consisting of deprived wages and [other] losses ... *from the date of the violation to the present.*"

---

**10.** VW also contends that the district court acted improperly in grounding the front pay award on the expert's notes and summary because those documents were not authenticated. However, VW never demanded that the summary and notes be authenticated and this argument is therefore waived. VW contends that the front pay award should not stand even though it did not raise a timely objection to the procedure because "[i]t was plain error for the district court to have relied upon a 'Summary of Damages' and attached incomprehensible notes that were not accompanied by any affidavit attesting to their authenticity, their author or the method by which they were prepared." Reply Br. at 22. Yet even the case on which VW relies in support of this "plain error exception" to the objection requirement presumes that the failure to authenticate alone does not constitute plain error. *See United States v. Papia*, 910 F.2d 1357, 1366 (7th Cir. 1990) (party who failed to object to lack of authentication waived that issue unless it was plain error for district court to admit unauthenticated document). And as indicated, Downes' expert discussed specific aspects of the summary and notes during his trial testimony, such that the general standard for proper authentication was met. *See* Fed.R.Evid. 901(a) (authentication requires "evidence sufficient to support a finding that the matter in question is what its proponent claims"). Finally, while we note that the expert's handwritten notes involve a good deal of

technical notation, they are well-organized and far from incomprehensible, especially given the expert's explanation of much of them during trial.

**11.** In its trial and appellate briefs, VW argues that Downes should not have been awarded front pay because he failed to present evidence of how long he was willing or physically able to work. This argument has some appeal. *See Coston*, 831 F.2d at 1333–35 (district court did not abuse its discretion in denying front pay where no evidence that plaintiff was willing or physically able to work until full retirement age). In *Coston*, however, the plaintiff was 55 years old and sought front pay through retirement age, presumably a decade or so later. Here, in contrast, the plaintiff is in his early sixties and the district court ultimately limited his award to only three years of front pay. Consequently, the court was within its discretion to assign less weight to considerations of Downes' health, which, in the absence of contrary information, we presume to be good. Moreover, given Downes' efforts to ascertain whether he could work beyond his one-year "special projects" consultancy, the court was at least entitled to infer that Downes was willing to work for a few years beyond the end of that consultancy.

ROA Doc. 58 at 156 (emphasis added). Thus, since we presume that the jury followed this instruction, *United States v. Cochran,* 955 F.2d 1116, 1120–21 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 460, 121 L.Ed.2d 368 (1992), we conclude that the jury merely determined that Downes had suffered damages in the amount awarded as back pay as of the time of the trial. To conclude otherwise would require us to speculate about the jury's precise rationale in not awarding the entire amount requested by Downes, an exercise which we may not pursue.

### D. *Prejudgment Interest and Attorney Travel Expenses*

VW also contests the district court's decision to award Downes prejudgment interest on the back pay award and attorney travel expenses. The parties agree that Downes is entitled to interest on the back pay award, but VW argues that such interest should be calculated only from the time Downes' severance benefits ran out in 1991, not (as the district court calculated) from the date Downes was wrongfully terminated in 1989.

Prejudgment interest on back pay is awarded to compensate plaintiffs for the loss of the use of money. *Partington v. Broyhill Furniture Industries, Inc.,* 999 F.2d 269, 274 (7th Cir.1993). Downes was informed of his impending termination in June of 1989. The termination, however, did not actually take effect until one year later, on July 1, 1990. Further, Downes received one year of severance pay after his termination took effect. Consequently, Downes did not actually suffer monetary loss until his severance pay ended, two years after he was first "injured." Thus, while we agree that Downes was entitled to prejudgment interest, we hold that the interest period should not start until the time of actual monetary injury, when severance pay ceased.[12]

With respect to attorney travel expenses, our decisions in *Heiar v. Crawford County,* 746 F.2d 1190, 1203 (7th Cir.1984), *cert. denied,* 472 U.S. 1027, 105 S.Ct. 3500, 87 L.Ed.2d 631 (1985), and *Henry v. Webermeier,* 738 F.2d 188, 191–92 (7th Cir.1984), establish that "expenses of litigation that are distinct from either statutory costs or the costs of the lawyer's time reflected in hourly billing rates—expenses for such things as postage, long distance phone calls, xeroxing, *travel,* paralegals and expert witnesses—are part of the reasonable attorney's fee allowed by the Civil Rights Attorney Fees Awards Act." *Heiar,* 746 F.2d at 1203.[13] Because attorney travel expenses are normally billed separately from an attorney's hourly fees, the district court properly exercised its discretion in holding that these costs were separately recoverable.

AFFIRMED IN PART, REVERSED IN PART.

---

**12.** Downes argues that calculating the interest from the time of injury compensates him for the fact that, as of June of 1989, he was no longer eligible for a bonus. However, the opportunity for a bonus is purely speculative and we believe it should not affect the calculation of interest.

**13.** VW's reliance on *Wahl v. Carrier Mfg. Co., Inc.,* 511 F.2d 209, 217 (7th Cir.1975), is misplaced. *Wahl* was decided before the Civil Rights Attorney Fees Awards Act, 29 U.S.C. § 1988, was enacted.