**William D. WILSON, Plaintiff,**

v.

**AM GENERAL CORPORATION,
Defendant.**

**No. 3:95–CV125RM.**

United States District Court,
N.D. Indiana,
South Bend Division.

Aug. 15, 1997.

John C. Hamilton, Doran Blackmond Ready Hamilton and Williams, South Bend, IN, for plaintiff.

Janilyn S. Brouwer, Gerald F. Lutkus, John D. LaDue, Barnes and Thornburg, South Bend, IN, for defendant.

## MEMORANDUM AND ORDER

MILLER, District Judge.

This cause is before the court on the plaintiff's post-trial motions for an award of attorney's fees and for addition of pre-judgment interest on back pay. For the reasons that follow, the court grants the plaintiff's motion (and amended motion) for an award of attorney's fees, awards the plaintiff $56,890.00 in reasonable attorney fees and expenses,

grants the plaintiff's motion for addition of pre-judgment interest on back pay, awards the plaintiff $13,604 in pre-judgment interest on the jury's back pay award, and awards the plaintiff $160,194 front pay.

The court presumes the reader's familiarity with the facts underlying this case and orders entered in this case thus far.

## I. ADDITION OF PRE–JUDGMENT INTEREST ON BACK PAY

Mr. Wilson testified at trial that his total wage loss for from his termination to trial was $144,834, and that his total losses (including a 40% discount figure) were $238,902. The jury awarded Mr. Wilson $238,902 in damages. Mr. Wilson moves for an award of pre-judgment interest on the jury's implicit award of $144,834 in back pay. In support, Mr. Wilson presents the affidavit of his economic expert, Dr. Roger Skurski, who states that he calculated a pre-judgment interest amount of $13,604, based on the prime interest rate appropriate per month from October 1994 to October 1996 as published by the Center for Business and Economic Research at Northeast Louisiana University and a November 1, 1996 *Wall Street Journal* article indicating a prime rate of 8.25% since February 1, 1996. Skurski Aff., ¶¶ 3, 4. Dr. Skurski explains that he calculated Mr. Wilson's pre-judgment interest figure by averaging his total income over the entire period in question on a monthly basis.

■■■ Pre-judgment interest is "presumptively available to victims of federal law violations." *McKnight v. General Motors Corp.*, 973 F.2d 1366, 1372 (7th Cir.1992); *see also Hutchison v. Amateur Electronic Supply, Inc.*, 42 F.3d 1037, 1047 (7th Cir.1994). Pre-judgment interest on back pay awards compensates a plaintiff for the loss of the use of the money. *Downes v. Volkswagen of America, Inc.*, 41 F.3d 1132, 1144 (7th Cir.1994); *see also Partington v. Broyhill Furniture Industries, Inc.*, 999 F.2d 269, 274 (7th Cir. 1993) ("Money has a time value, and prejudgment interest is therefore necessary in the ordinary case to compensate a plaintiff fully for a loss suffered at time t and not compensated until t + 1, 2, 3 ... n."). AM General filed no response or objection to Mr. Wilson's

motion for addition of pre-judgment interest on back pay. Based on the evidence Mr. Wilson presents, the court awards Mr. Wilson $13,604 in pre-judgment interest on the jury's implicit award of $144,834 in back pay.

## II. REINSTATEMENT AND FRONT PAY

### A. Reinstatement

■■■ The parties agree, though not for precisely the same reasons, that reinstatement is not appropriate in this case. The ADEA provides for "such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter, including ... judgments compelling employment, reinstatement or promotion." 29 U.S.C. § 626(b). Reinstatement is the preferred remedy, but is not appropriate in every case. *Downes v. Volkswagen of America, Inc.*, 41 F.3d 1132, 1141 (7th Cir.1994). Certain factors may counsel against reinstatement in a particular case, including where the circumstances render it impracticable (the position no longer exists), where the employee's sincere and rational preference is against reinstatement, where friction exists between the employer and employee (unrelated to the discrimination), or where the burden of court supervision does not outweigh the gains achieved from reinstatement. *Id; Price v. Marshall Erdman & Associates, Inc.*, 966 F.2d 320, 325 (7th Cir.1992). The court agrees with the parties that the circumstances in this case counsel against ordering Mr. Wilson's reinstatement. Mr. Wilson's position was eliminated as part of the RIF, and to the extent Mr. Bunnell performs duties Mr. Wilson performed, he would be displaced. Mr. Wilson's desire not to be reinstated, as well as the administrative burden of supervising his employment into the future, provide further support for declining to reinstate Mr. Wilson.

### B. Front Pay

Mr. Wilson asks the court to award him $160,194 in front pay, a figure based on the salary he last received from trial to retirement at age 65, less than three years from the judgment in this case. Because his front pay calculation does not include merit pay

increases, bonuses, inflation, or cost of living increases, Mr. Wilson urges the court not to reduce that amount to its present value. Mr. Wilson offers two additional bases for not reducing any front pay award to present value: AM General presented no evidence to support such a reduction and arriving at an accurate calculation of present value would prove a complicated task. Mr. Wilson also asserts that the $160,194 front pay award is appropriate in light of the jury's implicit rejection of AM General's claim that he failed to mitigate his damages in awarding him exactly what he requested in back pay.

AM General argues that no award of front pay is appropriate in this case in light of Mr. Wilson's failure to mitigate his damages. AM General reviews the legal authority on the issue of mitigation of damages and the evidence from trial, which it believes showed that Mr. Wilson had no intent to find comparable employment after his termination, that his primary focus was on moving to South Carolina to retire, that he lacks incentive to find other work because of his other sources of income, and that his efforts to secure comparable employment were not reasonable. AM General insists that any front pay award must be discounted to present value, despite its lack of evidence regarding the appropriate discount rate, because the plaintiff seeking a front pay award bears the burden of providing the appropriate discount rate and Mr. Wilson himself applied a 40% discount rate during trial to the lost pension benefits he sought. AM General argues that other independent factors support the calculation of a front pay award without salary adjustments in this case, including that salary increases and bonuses are not an entitlement at AM General, but are based on performance, and the evidence showed that AM General was becoming dissatisfied with Mr. Wilson's performance due in part to complaints regarding his interactions with TACOM and O'Gara–Hess.

■■■ The purpose of an award of front pay is to put the plaintiff in the same financial position that he would have occupied had he been reinstated. *McNeil v. Economics Laboratory, Inc.*, 800 F.2d 111, 118 (7th Cir. 1986). Front pay is "the difference (after

proper discounting to present value) between what the plaintiff would have earned in the future had he been reinstated at the time of trial and what he would have earned in the future in his next best employment." *Avitia v. Metropolitan Club of Chicago, Inc.*, 49 F.3d 1219, 1231 (7th Cir.1995); *Downes v. Volkswagen of America, Inc.*, 41 F.3d 1132, 1141 n. 8 (7th Cir.1994) ("This court has defined front pay as 'a lump sum ... representing the discounted present value of the difference between the earnings [an employee] would have received in his old employment and the earnings he can be expected to receive in his present and future, and by hypothesis inferior, employment.'" (*citing McKnight v. General Motors Corp.*, 908 F.2d 104, 116 (7th Cir.1990))). Relevant to the front pay determination are the plaintiff's prospects of obtaining comparable employment, the time period for the award, the plaintiff's ability to work, and whether liquidated damages have been awarded. *Ward v. Tipton County Sheriff Dept.*, 937 F.Supp. 791, 796 (S.D.Ind.1996) (*citing Downes*, 41 F.3d at 1141). An award must be reasonable, grounded in fact, and not overly speculative. *Downes*, 41 F.3d at 1142.

■■■ Mr. Wilson is entitled to a front pay award for the time between trial and age 65, at which time he concedes it is reasonable to assume that he would retire. Age plays a role in one's ability to find a new job, *see* trial testimony of F.K. Dempsey, Jr., and the court believes that Mr. Wilson's prospects of obtaining comparably high-level employment at his age are low. The jury did not find willfulness, so no liquidated damages award has been made, and the time from trial to Mr. Wilson's 65th birthday is not so long as to render the award of front pay speculative, and AM General presents no argument that it is.

■■■ AM General devotes several pages of its brief arguing that the evidence at trial established that Mr. Wilson should not receive an award of damages because he failed in his duty of mitigation. As Mr. Wilson points out, however, the jury necessarily found in favor of Mr. Wilson on AM General's defense of failure to mitigate damages in awarding full back pay. Jury in-

struction 12 informed the jury that if it found intentional discrimination, it could award back pay,[1] and jury instruction 14 directed the jury to "subtract from Mr. Wilson's award of damages any amount he could have earned in a new job" if AM General proved, "by a preponderance of the evidence, that Mr. Wilson unjustifiably failed to take a new job of like kind, status, and pay which was available to him, or failed to make reasonable efforts to find a new job." In awarding Mr. Wilson the entire amount he sought, the jury implicitly but necessarily found against AM General on its defense of failure to mitigate damages. Front pay is a matter within the court's discretion, but the jury's verdict binds this judge on the factual issues common to it and the court's determination of front pay. *Hunter v. Allis–Chalmers Corp.*, 797 F.2d 1417, 1421 (7th Cir.1986) (case involving § 1981 and Title VII claims tried simultaneously to jury and judge before Title VII provided for legal remedies). In light of the jury's finding, the court declines to reduce the front pay award on the basis of failure to mitigate damages.

The remaining issue for decision is whether to reduce the front pay award to its present value. AM General points out that the legal standard in this circuit clearly provides that front pay awards must be discounted to present value, but Mr. Wilson believes AM General has waived discounting of front pay in this case by not presenting evidence from which the court could do so. AM General points out that in this circuit, the trial court may deny a front pay request where the party requesting such an award "fails to provide . . . the essential data necessary to calculate a reasonably certain front pay award." *McKnight v. General Motors Corp.*, 973 F.2d 1366, 1372 (7th Cir.1992). And, if any figure is used, AM General believes it should be the 40% figure Mr. Wilson used at trial with respect to his future pension benefits, to which Mr. Wilson objects because of the difference in the time horizon

accounted for in the awards. Mr. Wilson suggests that the court simply cancel the discounting to present value in light of the fact that the front pay award he offers includes no bonuses, merit pay increases, and inflation. AM General disagrees with his reasoning, arguing that given AM General's financial state and Mr. Wilson's performance problems, the chances that he would have received bonuses or merit increases are slim.

■ The court does not believe it speculative to accept Mr. Wilson's reasoning and not discount the front pay award in light of the absence of any factor for inflation, merit pay increases, or bonuses. In light of the jury's verdict, and in the court's own view of the evidence, AM General did not show that Mr. Wilson's performance was unsatisfactory or would have kept him from receiving bonuses or merit pay increases. The parties agreed that AM General was undergoing a RIF in response to the decrease in military sales, but the record does not convince the court that bonuses and/or merit pay increases would not be available to those employees who remained. In these circumstances, and since the award is for a relatively short period of time that already has begun, the court believes Mr. Wilson's front pay request may well undercompensate him. *See Marcing v. Fluor Daniel, Inc.*, 826 F.Supp. 1128, 1139 & n. 11 (N.D.Ill.1993), *rev'd on other grounds*. In light of the intent of the ADEA to make victims of discrimination whole, reduction of the $160,194 front pay figure by the court to reflect its current value is unnecessary in these circumstances.

## III. ATTORNEY'S FEES

■ Mr. Wilson filed a statement of attorney's fees in the amount of $54,429.00 and expenses in the amount of $2,461.00. AM General voices no objection to Mr. Wilson's attorneys' hourly rates or the total amount his statement of fees and expenses reports. Mr. Wilson also asks the court to enhance his

---

1. The instruction further defined back pay as:
 the amount equal to the pay and fringe benefits that he would have earned in his employment with AM General if he had not been discharged on March 14, 1994, minus: the amount of severance pay and benefits he received from AM General between the date of his discharge and the date of trial and the amount of earnings and benefits he received from other employment during that time.
 Court's Final Jury Instructions, No. 12, at 6.

attorney's fee award by a multiplier of 50 percent, a suggestion AM General ardently opposes. For the reasons set forth in greater detail below, the court declines to increase Mr. Wilson's attorney's fees by a multiplier.

Mr. Wilson believes that the high degree of success achieved and quality of service his attorneys rendered justifies an enhancement of his attorney's fees award by at least 50 percent. Mr. Wilson discusses each of the factors set forth in *Hensley v. Eckerhart*, 461 U.S. 424, 433–434, 103 S.Ct. 1933, 1939–1940, 76 L.Ed.2d 40 (1983), with specific emphasis on the time, labor, and skill this case required, the contingency fee arrangement between Mr. Wilson and his attorney John Hamilton, the amount involved, and the results obtained. Mr. Wilson argues that the case survived a thoroughly documented and researched summary judgment motion and was presented at trial in three days, and that it required a high level of skill in light of AM General's vigorous defense. Mr. Wilson highlights the high degree of success he achieved, comparing the jury's award of $238,907 to the parties' settlement posture before trial: Mr. Wilson made a negotiable offer to settle for $365,000, but AM General refused to consider settlement.

The factor Mr. Wilson stresses most is the contingent fee arrangement, pursuant to which he agreed to pay his attorney one-third of his recovery. Mr. Wilson asserts that a multiplier is appropriate because the fee-shifting statute applicable to age discrimination claims, 29 U.S.C. § 216(b), is intended to relieve a successful plaintiff of the burden of paying his attorney's fees. Mr. Wilson concedes that the contingency fee arrangement does not supplant the presumption that the lodestar method produces a calculation of reasonable attorney's fees, *see Hensley v. Eckerhart* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983); *Simpson v. Sheahan*, 104 F.3d 998, 1001 (7th Cir.1997); *Bankston v. Illinois*, 60 F.3d 1249, 1255 (7th Cir.1995), but argues that the actual contractual relationship in this case and affidavits of other lawyers in the field provide a basis for applying a higher hourly rate than the $175 Mr. Hamilton charges.

Attorney Timothy Woods attests to his broad litigation experience and experience in employment discrimination cases and his familiarity with Mr. Hamilton and the prevailing rates charged by attorneys in the community practicing in the area of employment discrimination, and states that $175 or more per hour is reasonable a reasonable rate for Mr. Hamilton's services in light of his experience and skill. *See* Woods Aff. Attorney Charles Leone attests to his experience in employment discrimination law and familiarity with the rates of employment discrimination attorneys in this district, and states that $175 per hour is a reasonable rate. Lastly, attorney Aladean DeRose attests to her experience in employment discrimination cases and her familiarity with Mr. Hamilton and his excellent reputation in the community, reports that she charges $150 per hour for her services, and asserts that an hourly rate of $175 is reasonable for Mr. Hamilton given his skill and the difficulty of employment discrimination cases.

 Mr. Wilson bears the burden of showing that an upward adjustment to the lodestar amount is necessary to make the fee award reasonable. *Blum v. Stenson*, 465 U.S. 886, 898, 104 S.Ct. 1541, 1548–1549, 79 L.Ed.2d 891 (1984). A strong presumption lies in favor of the lodestar figure as reflecting reasonable fees for the representation, *id.* at 897, 104 S.Ct. at 1548; *Simpson v. Sheahan*, 104 F.3d 998, 1001 (7th Cir.1997); *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1310–1311 & n. 1 (7th Cir.1996), though in "cases of exceptional success," an enhancement may be justified, *Blum*, 465 U.S. at 901, 104 S.Ct. at 1550 (*quoting Hensley v. Eckerhart*, 461 U.S. 424, 435, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983)). The factors Mr. Wilson discusses "usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Hensley*, 461 U.S. 424, 434 n. 9, 103 S.Ct. 1933, 1940 n. 9, 76 L.Ed.2d 40 (1983).

Mr. Wilson has not persuaded the court that his attorneys' lodestar calculation of fees should be enhanced by a multiplier in the circumstances of this case. Mr. Wilson certainly enjoyed a high level of success, prevail-

ing on all but claim for liquidated damages, but his success was not so phenomenal as to warrant an upward adjustment from the presumptively appropriate lodestar figure. *See Blum*, 465 U.S. at 900, 104 S.Ct. at 1549–1550 (noting that results obtained is generally subsumed within the other factors used to calculate the lodestar amount and should not normally provide an independent basis for an upward adjustment, but may be important where a plaintiff has "prevailed" on only some of his claims for relief). Mr. Wilson's counsel, Mr. Hamilton, is an experienced and skilled employment discrimination attorney with an excellent reputation in the community, but his hourly fee reflects those factors. *Blum*, 465 U.S. at 899, 104 S.Ct. at 1549; *Pennsylvania v. Delaware Valley Citizens' Council*, 478 U.S. 546, 567, 106 S.Ct. 3088, 3099, 92 L.Ed.2d 439 (1986) (requiring fee petitioner to show why lodestar amount is inadequate before an adjustment for the high quality of services may be made). That Mr. Wilson may end up owing his attorney more than the lodestar amount carries some weight in light of the ADEA's make-whole remedial purpose, but the court may not consider the risks inherent in contingency arrangements after *City of Burlington v. Dague*, 505 U.S. 557, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992).

## IV. CONCLUSION

For the reasons set forth above, the court GRANTS the plaintiff's motion for addition of pre-judgment interest on back pay (filed Nov. 4, 1996 (# 105)) and GRANTS IN PART the plaintiff's motion for an award of attorneys fees and expenses (filed Nov. 7, 1996 (# 111)) and amended motion for an award of attorneys fees and expenses (filed Nov. 8, 1996 (# 116)). In addition to the amount awarded to the plaintiff in the verdict, the defendant shall pay to the plaintiff: (1) $13,604 in pre-judgment interest; (2) $160,194 in front pay; and (3) $56,890.00 in reasonable attorney's fees and expenses.

SO ORDERED.