Kerry D. OGDEN, Plaintiff,

v.

WAX WORKS, INC., Defendant.

No. C96–4116–MWB.

United States District Court,
N.D. Iowa,
Western Division.

Dec. 8, 1998.

Jay E. Denne, Munger & Reinschmidt, Sioux City, IA, for plaintiff.

Steven R. Jensen, Crary, Huff, Inkster, Hecht & Sheehan, P.C., Sioux City, IA, for defendants.

## MEMORANDUM OPINION AND ORDER REGARDING PLAINTIFF'S REQUEST FOR FRONT PAY

BENNETT, District Judge.

I. INTRODUCTION ................................................. 1006

II. LEGAL ANALYSIS ............................................... 1007
 A. Prospective Equitable Relief Available Under Title VII .................... 1007
 1. Reinstatement ..................................... 1008
 a. Nature of the remedy ........................... 1008
 b. Factors considered in ordering reinstatement ..................... 1008
 2. Front pay ........................................ 1010
 a. Nature of the remedy ........................... 1010
 b. Factors considered in awarding front pay ......................... 1012
 B. Ogden's Request For Prospective Equitable Relief ........................ 1015
 1. Reinstatement ..................................... 1015
 2. Front pay ........................................ 1017
 3. Calculation of the front pay award ................................ 1019

III. CONCLUSION ................................................. 1022

"They can expect nothing but their labour for their pains." MIGUEL DE CERVANTES, DON QUIXOTE (1605, 1615) (AUTHOR'S PREFACE, Lockhart's, trans.). In a cruel twist of Don Quixote's words, a jury determined that the plaintiff in this employment discrimination case received "but pain for her labour," and awarded her compensatory and punitive damages on her claims for hostile work environment, *quid pro quo* harassment and retaliation. Presently before the court is the plaintiff's request for a front pay award. To resolve the matter, the court must determine which form of prospective equitable relief—the "preferred" remedy of reinstatement or front pay—is warranted in this case. If the court determines front pay is indeed appropriate, it must ascertain the amount and duration of such an award.

### I. INTRODUCTION

Following a five day trial, the jury returned a verdict on November 17, 1998, in favor of plaintiff Kerry Ogden on her claims of unlawful employment discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Specifically, the jury determined that defendant Wax Works, Inc., violated the provisions of Title VII by allowing the creation of a sexually hostile work environment, and by engaging in *quid pro quo* harassment and retaliation. Wax Works, Inc. owns and operates the Disc Jockey music store in the Southern Hills Mall, Sioux City, Iowa, where Ogden was employed as the store manager. The jury also found that Ogden was constructively discharged from her employment.

The jury awarded Ogden $40,000.00 in compensatory damages, pre-termination back pay in the amount of $792.00, post-termination back pay in the amount of $75,599.00, and $500,000.00 in punitive damages, for a total damages award of $616,391.00. Of course this is not the amount for which judgment will ultimately be entered. Section 1981a(3)(D) imposes a statutory cap on the amount of compensatory and punitive damages a plaintiff may receive. 42 U.S.C. § 1981a(b)(3). Under this provision, Ogden's award for compensatory and punitive damages will be limited to the sum of $300,000.00 because Wax Works employs more than 500 employees. 42 U.S.C. § 1981a(b)(3)(D). The United States Court of Appeals for the Eighth Circuit recently held that the statutory cap is not applicable to the equitable award of front pay. *Kramer v. Logan Cty. Sch. Dist.,* 157 F.3d 620, 626 (8th Cir.1998). To the extent the statutory cap is germane to the issue of front pay, it will be discussed in the court's legal analysis *infra.*

On November 24, 1998, in accord with the United States Court of Appeals for the Eighth Circuit's instruction that the determination of front pay is an equitable issue for the court, *see Newhouse v. McCormick & Co., Inc.,* 110 F.3d 635, 643 (8th Cir.1997), the court held a post-verdict evidentiary hearing on Ogden's request for front pay. The only evidence presented by the plaintiff—in addition to the evidence offered and received at trial—was the testimony of Kerry Ogden herself. Likewise, the only evidence presented by Wax Works was cross-examination testimony elicited from Ogden. Ogden testified that she seeks approximately eight years

of front pay in the amount of $229,989.25. The court will discuss the precise method employed by Ogden in reaching this requested sum in its legal analysis. However, for introductory purposes, the court notes that Ogden calculated this amount based on salary increases and bonuses she anticipated receiving had she remained at Wax Works, less her actual expected earnings over the requested eight year period.

Wax Works has not argued that reinstatement would be appropriate or that an award of front pay would be improper in this case. However, Wax Works challenges the amount of Ogden's request for front pay on the grounds that it is based on salary figures unsupported by the evidence, that it contains no adjustment to present value, and that it includes compensation for insurance benefits. Additionally, Wax Works argues that Ogden has failed to satisfactorily mitigate her potential future lost earnings by failing to seek full-time managerial employment.

With this background in mind, the court will turn first to a review of the prospective equitable remedies available under Title VII. Next, the court will consider which future equitable remedies—if any—should be awarded to Ogden in this case.

## II. LEGAL ANALYSIS

### A. Prospective Equitable Relief Available Under Title VII

 Title VII, like other federal anti-discrimination laws, supplies broad legal and equitable remedies to make successful plaintiffs whole.[1] 42 U.S.C. § 2000e–5; *see also McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 357–58, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995) (discussing various federal anti-discrimination laws and the means of relief available); *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 419, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975) (stating that "[t]he 'make whole' purpose of Title VII is made evident by the legislative history."); *Cowan v. Strafford R–VI Sch. Dist.*, 140 F.3d 1153, 1160 (8th Cir.1998) (acknowledging the court's obligation "to fulfill the make-whole purposes of Title VII)." Among the myriad of remedies available to individuals who prevail on their claims of employment discrimination are two alternative types of equitable prospective relief—reinstatement and front pay.[2] *Newhouse v. McCormick & Co., Inc.*, 110 F.3d 635, 641 (8th Cir.1997). These equitable remedies may be awarded to compensate successful plaintiffs for lost future earnings. *Feldman v. Philadelphia Hous. Auth.*, 43 F.3d 823, 832–33 (3d Cir.1994). The purpose of and method for calculating these remedies have been characterized in largely the same manner whether relief is sought under Title VII, the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, (ADEA), or the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, (ADA). *Lussier v. Runyon*, 50 F.3d 1103, 1107–08 (1st Cir.1995), *cert. denied*, 516 U.S. 815, 116 S.Ct. 69, 133 L.Ed.2d 30 (1995). The choice of which prospective equitable remedy, if either, should be awarded in a given case is committed to the sound discretion of the trial court. *E.E.O.C. v. HBE Corp.*, 135 F.3d 543, 555 (8th Cir.1998); *Mason v. Oklahoma Turnpike Auth.*, 115 F.3d 1442, 1458 (10th Cir. 1997); *Suggs v. ServiceMaster Educ. Food Management*, 72 F.3d 1228, 1234 (6th Cir. 1996); *Standley v. Chilhowee R–IV Sch. Dist.*, 5 F.3d 319, 322 (8th Cir.1993); *Hybert v. Hearst Corp.*, 900 F.2d 1050, 1056 (7th Cir.1990).

---

1. Title VII of the Civil Rights Act of 1964 was amended by the Civil Rights Act of 1991, Pub.L. 102–166, 105 Stat. 1071. *Caviness v. Nucor–Yamato Steel Co.*, 105 F.3d 1216, 1218 (8th Cir. 1997). Prior to the 1991 amendments, only equitable relief was available under the Act. *Id.* "Section 102 of the 1991 Act, however, now makes it possible for a successful plaintiff 'to recover compensatory and punitive damages for certain violations of Title VII.' "*Id.* (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 247, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994)).

2. The United States Court of Appeals for the First Circuit apparently takes issue with the characterization of reinstatement and front pay as "alternative" remedies. In *Selgas v. American Airlines, Inc.*, 104 F.3d 9, 13 (1st Cir.1997), the court explained that these remedies are not mutually exclusive because "[f]ront pay takes a plaintiff to the point of employability. Reinstatement at that point would, in effect, 'perfect' the remedy because the plaintiff would be back in the very job she lost unlawfully."

### 1. Reinstatement

#### a. Nature of the remedy

■ Reinstatement, often characterized as the "preferred" remedy in unlawful employment termination cases, is specifically provided for by statute:

(1) If the court finds that the respondent has intentionally engaged in ... an unlawful employment practice ... the court may ... order ... reinstatement. ...

42 U.S.C. § 2000e–5(g)(1). Reinstatement may be achieved by returning the plaintiff to his or her former position or by placing the plaintiff in a "comparable" position to the one held immediately before the illegal discharge. *Carter v. Sedgwick Cty.*, 929 F.2d 1501, 1505 (10th Cir.1991) (ordering reinstatement under Title VII and instructing that the plaintiff be returned "to her former job or to a position with a commensurate rating ...."). One court has explained the universal preference for reinstatement as a result of the "dual goals" it accomplishes—"providing full coverage for the plaintiff and ... deterring such [unlawful] conduct by employers in the future." *Selgas v. American Airlines, Inc.*, 104 F.3d 9, 13 (1st Cir.1997).

The wisdom of the judicially created preference for reinstatement over front pay has not been addressed by the parties here. Nevertheless, the court notes that Associate Professor Susan K. Grebeldinger has authored a scholarly critique criticizing the overwhelming preference for reinstatement over front pay in fashioning prospective relief for discriminatorily discharged employees. Susan K. Grebeldinger, *The Role Of Workplace Hostility In Determining Prospective Remedies For Employment Discrimination: A Call For Greater Judicial Discretion In Awarding Front Pay*, 1996 U.Ill.L.Rev. 319 (1996). Professor Grebeldinger cogently observes, *inter alia*, that reinstatement "does not always serve the interests of the victims of discrimination, the employers, or society." *Id.* at 320. Although she recognizes that reinstatement "can be a powerful remedial tool," Professor Grebeldinger emphasizes that front pay can serve the same remedial functions and may better serve to make a plaintiff whole in a given case. *Id.* at 362. She concludes her critique with the following observations:

[C]ourts should abandon the reinstatement preference and determine the appropriate prospective remedy case-by-case.

And, in doing so, they must pay greater attention to the hostility exhibited by one or both parties. Essentially, the courts should forego their tradition of preferring reinstatement and adopt the older and more powerful tradition of using their full equitable discretion in assessing remedies.

*Id.* Perhaps, when faced with a properly raised challenge to the preference for reinstatement, courts will seize the opportunity to reevaluate the preference in light of the arguments advanced by Professor Grebeldinger.

#### b. Factors considered in ordering reinstatement

Despite its widespread status as the "preferred" remedy, virtually every circuit court of appeals has recognized that under certain circumstances reinstatement may be an inappropriate—if not an impracticable or impossible—remedy. *Duke v. Uniroyal, Inc.*, 928 F.2d 1413, 1423–24 (4th Cir.), *cert. denied*, 502 U.S. 963, 112 S.Ct. 429, 116 L.Ed.2d 449 (1991), (citing cases). The United States Court of Appeals for the Eighth Circuit has recognized that although reinstatement is the preferred remedy, "extraordinary circumstances [may] warrant denial of reinstatement." *Cowan*, 140 F.3d at 1160. A substantial degree of hostility or animosity between the parties has been the most frequently cited example of such an "extraordinary circumstance" in this circuit. *See, e.g.*, *United Paperworkers Int'l Union, AFL—CIO, Local 274 v. Champion Int'l Corp.*, 81 F.3d 798, 805 (8th Cir.1996) (observing that "[s]ubstantial hostility, above that normally incident to litigation, is a sound basis for denying reinstatement."). For example, the *Cowan* court agreed that reinstatement in a Title VII case was not proper when the relationship between the plaintiff-teacher and her supervisor-principal was so badly damaged that it could not be restored and would likely hinder the functioning of the school. In *Standley v. Chilhowee R–IV Sch. Dist.*, 5 F.3d 319, 322 (8th Cir.1993), the court acknowledged that the "friction" that precipitated the litigation between the par-

ties would "dog the [employer] if appellants were returned to their ... positions." On this basis, the court characterized reinstatement as an "ill-advised remedy." *Id.* Likewise, in the context of an ADEA case, the Eighth Circuit Court of Appeals held that front pay rather than the preferred remedy of reinstatement was appropriate in light of evidence that the relationship between the parties was "strained," the plaintiff employee's testimony that he did not think he could go back to work for the employer, and evidence that the representative of the company who made the discriminatory decision not to hire would have remained the plaintiff's supervisor. *Newhouse,* 110 F.3d at 641.

Cases from other circuit courts of appeals reveal consideration of similar factors, as well as additional ones. The United States Court of Appeals for the Third Circuit has observed that reinstatement "is not the exclusive remedy, because it is not always feasible, such as when there exists 'irreparable animosity between the parties.'" *Feldman,* 43 F.3d at 831 (quoting *Blum v. Witco Chem. Corp.,* 829 F.2d 367, 374 (3d Cir.1987)). The United States Courts of Appeals for the First, Second, Ninth, and Tenth Circuits have also cited hostility between the parties as a factor weighing against reinstatement. *Criado v. IBM Corporation,* 145 F.3d 437, 445 (1st Cir.1998); *Kirsch v. Fleet Street, Ltd.,* 148 F.3d 149, 169 (2d Cir.1998); *Cassino v. Reichhold Chem., Inc.,* 817 F.2d 1338, 1347 (9th Cir.1987), *cert. denied,* 484 U.S. 1047, 108 S.Ct. 785, 98 L.Ed.2d 870 (1988); *James v. Sears, Roebuck & Co., Inc.,* 21 F.3d 989, 997 (10th Cir.1994).

Acknowledging the "desirability of reinstatement" but conceding that "intervening historical circumstances can make it [an] impossible or inappropriate [remedy]," the United States Court of Appeals for the Fourth Circuit set forth the following examples of when reinstatement may not be proper:

[W]hen the employer has demonstrated such extreme hostility that, as a practical matter, a productive and amicable working relationship would be impossible. Reinstatement has also been found inappropriate when the litigation itself created such animosity between the parties that any potential employer-employee relationship was irreparably damaged; or when the company was no longer in business; or when the particular business for which the plaintiff was qualified was no longer operating; or when there was no comparable position available. Also when the period for reinstatement was expected to be a relatively short one. ...

*Duke v. Uniroyal, Inc.,* 928 F.2d 1413, 1423 (4th Cir.1991) (internal citations and quotations omitted). By the same token, the United States Court of Appeals for the Fifth Circuit has approved as permissible consideration of factors such as "discord and antagonism" between the parties, the availability of positions, the displacement of innocent employees, a plaintiff's success in securing other similar employment, and the need for certainty and predictability in personnel decisions in determining whether to award reinstatement. *Ray v. Iuka Special Mun. Separate Sch. Dist.,* 51 F.3d 1246, 1254–55 (5th Cir.1995).

The United States Court of Appeals for the Sixth Circuit has observed that reinstatement may not be appropriate in cases where the "plaintiff has found other work, where reinstatement would require displacement of a non-culpable employee, or where hostility would result." *Roush v. KFC Nat'l Management Co.,* 10 F.3d 392, 398 (6th Cir.1993), *cert. denied,* 513 U.S. 808, 115 S.Ct. 56, 130 L.Ed.2d 15 (1994). The *Roush* court went on to observe that even though the plaintiff in that case was not seeking reinstatement, the defendant had failed to produce any evidence that it had offered reinstatement to the plaintiff or that reinstatement was a "viable remedy given the apparent hostility [between the plaintiff and an offending co-worker]." *Id.; cf. Best v. Shell Oil Co.,* 4 F.Supp.2d 770, 774 (N.D.Ill.1998) (stating that the parties "agree reinstatement is not appropriate in this case" and proceeding directly to consideration of plaintiff's claim for front pay).

Adding to this list, the United States Court of Appeals for the Seventh Circuit found that the district court had not abused its discretion in refusing to award reinstatement after considering factors such as the plaintiff's demand for a different job and relocation to a new city, the plaintiff's change in career goals since the unlawful employment action, no evidence of an open position, and the

"acrimonious" relationship between the parties. *McKnight v. General Motors Corp.*, 973 F.2d 1366, 1370–71 (7th Cir.1992). For its part, the United States Court of Appeals for the Eleventh Circuit has approved consideration of factors such as a court's findings that the employer " 'intimidated or threatened' " the plaintiff and that the plaintiff's " 'self-worth was crushed by his dismissal' " to determine the propriety of reinstatement. *Lewis v. Federal Prison Indus., Inc.*, 953 F.2d 1277, 1280 (11th Cir.1992) (quoting *Eivins v. Adventist Health Sys.*, 660 F.Supp. 1255, 1263 (D.Kan.1987)). The *Lewis* court also expressed its agreement with other courts' conclusions that reinstatement may be inappropriate " 'where discord and antagonism between the parties would render reinstatement ineffective as a make-whole remedy.' " *Id.* (quoting *Goldstein v. Manhattan Indus.*, 758 F.2d 1435, 1449 (11th Cir.), *cert. denied*, 474 U.S. 1005, 106 S.Ct. 525, 88 L.Ed.2d 457 (1985) and citing *E.E.O.C. v. Prudential Federal Sav. & Loan Ass'n*, 763 F.2d 1166, 1172 (10th Cir.), *cert. denied*, 474 U.S. 946, 106 S.Ct. 312, 88 L.Ed.2d 289 (1985)).

▮ As is apparent from the varied and numerous factors cited above, the task of determining the propriety of reinstatement must be undertaken with careful consideration of all relevant facts and circumstances presented in the case. *See Standley*, 5 F.3d at 322 ("Considering the totality of the circumstances, we conclude that the District Court did not abuse its discretion in denying appellant's reinstatement."). However, to the extent a framework of potentially applicable factors will assist in the analysis, a synthesis of the decisions discussed above suggest the following pertinent considerations:

- (1) whether the employer is still in business, *Duke*, 928 F.2d at 1423;
- (2) whether there is a comparable position available for the plaintiff to assume, *Roush*, 10 F.3d at 398; *Duke*, 928 F.2d at 1423;
- (3) whether an innocent employee would be displaced by reinstatement, *Ray*, 51 F.3d at 1254; *Roush*, 10 F.3d at 398; *McKnight*, 973 F.2d at 1370–71;
- (4) whether the parties agree that reinstatement is a viable remedy, *Ray*, 51 F.3d at 1254; *Roush*, 10 F.3d at 398;
- (5) whether the degree of hostility or animosity between the parties—caused not only by the underlying offense but also by the litigation process—would undermine reinstatement, *Cowan*, 140 F.3d at 1160; *Ray*, 51 F.3d at 1254; *Roush*, 10 F.3d at 398; *Standley*, 5 F.3d at 322; *McKnight*, 973 F.2d at 1370–71; *Lewis*, 953 F.2d at 1280; *Duke*, 928 F.2d at 1423;
- (6) whether reinstatement would arouse hostility in the workplace, *Cowan*, 140 F.3d at 1160; *Ray*, 51 F.3d at 1254; *Roush*, 10 F.3d at 398; *Standley*, 5 F.3d at 322; *McKnight*, 973 F.2d at 1370–71; *Lewis*, 953 F.2d at 1280; *Duke*, 928 F.2d at 1423;
- (7) whether the plaintiff has since acquired similar work, *Roush*, 10 F.3d at 398;
- (8) whether the plaintiff's career goals have changed since the unlawful termination, *McKnight*, 973 F.2d at 1370–71; and
- (9) whether the plaintiff has the ability to return to work for the defendant employer—including consideration of the effect of the dismissal on the plaintiff's self-worth, *Newhouse*, 110 F.3d at 641; *Lewis*, 953 F.2d at 1280.

This list is not intended to provide a uniform litany of pertinent considerations. Indeed, compilation of such a list is impracticable given the fact-intensive nature of the reinstatement inquiry. *See Standley*, 5 F.3d at 322. Although these factors are traditionally considered by courts in ascertaining whether reinstatement is an appropriate remedy, the trial court must take care to fashion any equitable relief to the circumstances of the case at hand.

### 2. Front pay

#### a. Nature of the remedy

If the court concludes that reinstatement is an inappropriate form of prospective relief, it may still elect to award the equitable remedy of front pay.[3] *Denesha v. Farmers Ins.*

---

**3.** There appears to be some disagreement among the circuit courts of appeals regarding the neces-

*Exch.*, 161 F.3d 491, 501 (8th Cir.1998). Unlike the remedy of reinstatement, front pay is not specifically provided for as a form of relief under either the Civil Rights Act of 1964 or the Civil Rights Act of 1991. 42 U.S.C. § 2000e–5(g); 42 U.S.C. § 1981a. In fact, the legislative history accompanying the Civil Rights Act of 1991 contains only one reference to front pay. 137 CONG. REC. H9527 (daily ed. Nov. 7, 1991) (statement of Rep. Edwards). Nevertheless, courts have endorsed the use of the front pay as an alternative form of prospective equitable relief in situations where reinstatement is an inappropriate remedy.[4] *Denesha*, 161 F.3d 491, 501 (8th Cir.1998); *see also, Duke*, 928 F.2d at 1423 (observing that other remedies may be considered when reinstatement is inappropriate, and concluding that front pay is among these remedies); *Hansard v. Pepsi–Cola Metro. Bottling Co.*, 865 F.2d 1461, 1469–70 (5th Cir.), *cert. denied*, 493 U.S. 842, 110 S.Ct. 129, 107 L.Ed.2d 89 (1989) (finding award of front pay improper absent a finding that reinstatement was not feasible); *McNeil v. Economics Lab., Inc.*, 800 F.2d 111, 118 (7th Cir.1986), *cert. denied*, 481 U.S. 1041, 107 S.Ct. 1983, 95 L.Ed.2d 823 (1987) (agreeing that front pay may be an appropriate remedy when reinstatement is inappropriate); *Wildman v. Lerner Stores Corp.*, 771 F.2d 605, 616 (1st Cir.1985) (adopting rule that future damages are not to be awarded unless reinstatement is impracticable or impossible); *Prudential Federal Sav. & Loan Assoc.*, 763 F.2d at 1172 (noting that front pay may be a proper remedy when reinstatement is not feasible); *Goldstein*, 758 F.2d at 1449 (stating "[f]ront pay may be particularly appropriate in lieu of reinstatement where discord and antagonism between the parties would render reinstatement ineffective."); *Dillon v. Coles*, 746 F.2d 998, 1006 (3d Cir. 1984) (recognizing court's equitable power to award front pay when appropriate); *Whittlesey v. Union Carbide Corp.*, 742 F.2d 724, 728 (2d Cir.1984) (observing that front pay is "necessary as 'equitable relief'" when reinstatement is denied); *Gibson v. Mohawk Rubber Co.*, 695 F.2d 1093, 1100 (8th Cir. 1982) (observing that monetary damages may be awarded in lieu of reinstatement); *Thompson v. Sawyer*, 678 F.2d 257, 292 (D.C.Cir.1982) (approving use of front pay awards to make employment discrimination plaintiffs whole).

As mentioned previously, front pay is intended to assist in making a discriminatorily discharged employee whole. *Cowan*, 140 F.3d at 1160; *Suggs*, 72 F.3d at 1234. However, courts have cautioned that awards of front pay should be tempered to avoid a "windfall" to the successful plaintiff. *See, e.g., Suggs*, 72 F.3d at 1234 (observing that "[a]wards under Title VII must be reasonable: An employee who was discriminatorily discharged must be made whole, but is not entitled to a windfall."); *Standley*, 5 F.3d at 322 (observing that court awarding front pay

---

sity of requesting reinstatement as a prerequisite to obtaining an award of front pay. The law of the Third Circuit requires a plaintiff to request reinstatement in order to raise the issue of front pay. *Wehr v. Burroughs Corp.*, 619 F.2d 276, 283 (3d Cir.1980). In the Tenth Circuit, however, such a request is not required so long as the evidence bears out " 'an atmosphere of hostility.' " *E.E.O.C. v. Prudential Federal Sav. & Loan Ass'n*, 763 F.2d 1166, 1173 n. 2 (10th Cir.1985) (quoting *Fitzgerald v. Sirloin Stockade, Inc.*, 624 F.2d 945, 957 (10th Cir.1980)). The United States Court of Appeals for the Eighth Circuit has confronted the issue and determined that a plaintiff is not automatically barred from pursuing the remedy of front pay absent a request for reinstatement. *Williams v. Valentec Kisco, Inc.*, 964 F.2d 723, 730 (8th Cir.), *cert. denied*, 506 U.S. 194, 113 S.Ct. 716, 121 L.Ed.2d 656 (1993). Even if a plaintiff has not formally requested reinstatement, the district court may make a front pay award so long as reinstatement would be an inappropriate remedy. *Id.; see also*

*Roush*, 10 F.3d at 398 n. 8 (noting "[w]e have never held that a plaintiff must request reinstatement as a prerequisite to recovering front pay, and we decline to so hold in this case.").

4. The United States Supreme Court has yet to declare its view on the propriety of awarding front pay in employment discrimination cases. *See United States v. Burke*, 504 U.S. 229, 239 n. 9, 112 S.Ct. 1867, 119 L.Ed.2d 34 (1992) (noting that "[s]ome courts have allowed Title VII plaintiffs who were wrongfully discharged and for whom reinstatement was not feasible to recover 'front pay' or future lost earnings. In fact, the Court has only mentioned front pay on a handful of occasions.)" *Forney v. Apfel*, 524 U.S. 266, ——, 118 S.Ct. 1984, 1988, 141 L.Ed.2d 269 (1998); *McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 362, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995); *Burke*, 504 U.S. at 239, 112 S.Ct. 1867; *Franks v. Bowman Transp. Co., Inc.*, 424 U.S. 747, 777, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976).

in a § 1983 case "must attempt to make the plaintiff whole, yet ... avoid granting ... a windfall."); *McKnight,* 973 F.2d at 1372 (stating that "[d]amages in employment discrimination cases are not intended to insure a plaintiff's future financial success."); *Duke,* 928 F.2d at 1424 (cautioning that "[b]ecause of the potential for windfall, ... the use [of front pay] must be tempered.")

The United States Court of Appeals for the Eighth Circuit has defined front pay as "an equitable remedy, which the district court in its discretion may award under the civil rights statutes to make the injured party whole." *Kramer v. Logan Cty. Sch. Dist.,* 157 F.3d 620, 626 (8th Cir.1998) (quoting *Newhouse,* 110 F.3d at 641). The court also expressed its view that "front pay is not so much a monetary award for the salary that the employee would have received but for the discrimination, but rather the monetary equivalent of reinstatement, to be given in situations where reinstatement is impracticable or impossible." *Id.; accord Williams v. Pharmacia, Inc.,* 137 F.3d 944, 952 (7th Cir. 1998) (observing that front pay is "the functional equivalent of reinstatement because it is a substitute remedy that affords the plaintiff the same benefit ... as the plaintiff would have received had she been reinstated."); *cf. Avitia v. Metropolitan Club of Chicago, Inc.,* 49 F.3d 1219, 1232 (7th Cir. 1995); *Suggs,* 72 F.3d at 1234 (stating "[t]he purpose of front pay in a Title VII case is to put an injured party in the same position the party would have occupied in the absence of discrimination, neither more nor less." quoting *Griffin v. Michigan Dep't of Corrections,* 5 F.3d 186, 189 (6th Cir.1993)); *Barbour v. Merrill,* 48 F.3d 1270, 1280 (D.C.Cir.1995) (observing "the purpose of front pay is 'to make a victim of discrimination "whole" and to restore him or her to the economic position he or she would have occupied but for the unlawful conduct of his or her employer.'" quoting *Green v. USX,* 843 F.2d 1511, 1531 (3d Cir.1988)); *Downes v. Volkswagen of Am., Inc.,* 41 F.3d 1132, 1141 n. 8 (7th Cir.1994) (defining front pay as a "lump sum ... representing the discounted present value of the difference between the earnings [an employee] would have received in his old employment and the earnings he can be expected to receive in his present and future, and by hypothesis inferior, employment.").

### b. Factors considered in awarding front pay

By their nature, front pay awards are fashioned amidst some amount of speculation. As the length of time for which front pay is requested increases, so does the degree of speculation. *McKnight,* 973 F.2d at 1372; *Williams v. Pharmacia Opthalmics, Inc.,* 926 F.Supp. 791, 796 (N.D.Ind.1996). Although courts should not automatically refuse to order front pay on the ground that some speculation about future earnings is necessary, the court should be cautious not to award amounts that are "unduly speculative." *Barbour,* 48 F.3d at 1280; *McKnight,* 973 F.2d at 1372.

■ The plaintiff bears the initial burden of proof in establishing a claim for front pay:

The plaintiff bears the initial burden of providing the district court "with the essential data necessary to calculate a reasonably certain front pay award," including "the amount of the proposed award, the length of time the plaintiff expects to work for the defendant, and the applicable discount rate." *McKnight v. General Motors Corp.,* 973 F.2d 1366, 1372 (7th Cir.1992), *cert. denied,* 507 U.S. 915, 113 S.Ct. 1270, 122 L.Ed.2d 665 (1993); *See Fleming v. County of Kane,* 898 F.2d 553, 560 (7th Cir.1990).

*Barbour,* 48 F.3d at 1279. If a plaintiff fails to supply the district court with the information necessary to "calculate a reasonably certain award," the court may reject the request for front pay. *McKnight,* 973 F.2d at 1372. The defendant may, of course, challenge the amount, duration, or discount rate of the requested award, as well as assert the "affirmative defense that the plaintiff failed to mitigate damages." *Barbour,* 48 F.3d at 1279–80.

■ As noted in the discussion regarding reinstatement, the fact-intensive nature of the front pay inquiry precludes an all-encompassing list of relevant considerations. Indeed, the United States Court of Appeals for the Eighth Circuit has stated that a district

court "must consider many complicated factors in deciding whether to award front pay." *Standley*, 5 F.3d at 322. Similarly, the United States Court of Appeals for the Fourth Circuit has made the following observations on the subject:

> The infinite variety· of factual circumstances that can be anticipated do not render any remedy of front pay susceptible to legal standards for awarding damages. Its award, as an adjunct or an alternative to reinstatement, must rest in the discretion of the court in shaping the appropriate remedy.

*Duke*, 928 F.2d at 1424; *accord Mason v. Oklahoma Turnpike Auth.*, 115 F.3d 1442, 1458 (10th Cir.1997) (observing that a request for front pay requires the court to "consider many complicated and interlocking factors."). Nevertheless, to assist in the determination of the amount and duration of front pay relief that will make a plaintiff "whole," several courts of appeals have identified factors to be considered.[5]

The Eighth Circuit Court of Appeals has approved consideration of the length of time the plaintiff has been employed with the defendant-employer and the likelihood employment would have continued absent the discrimination to assist the court in fashioning a front pay award. *See Standley*, 5 F.3d at 322 (concluding the district court had not abused its discretion in limiting the award of front pay to three years when the evidence showed, *inter alia*, that the plaintiffs were probationary teachers and that their contracts had not been renewed). The court has also allowed consideration of the length of time it will take the plaintiff to secure employment with pay and responsibilities equal to the pay and responsibilities the plaintiff had before the discriminatory discharge in calculating a front pay award. *HBE Corp.*, 135 F.3d at 555; *Hukkanen v. Int'l Union of Operating Eng'rs, Hoisting & Portable Local No. 101*, 3 F.3d 281, 286 (8th Cir.1993). Adding to this list, the United States Court of Appeals for the First Circuit recently suggested that another relevant consideration may be a plaintiff's inability to gain comparable employment because of a lack of education. *See Kelley v. Airborne Freight Corp.*, 140 F.3d 335, 355 n. 12 (1st Cir.), *cert. denied*, ―― U.S. ――, 119 S.Ct. 341, 142 L.Ed.2d 281 (1998) (observing that front pay is an equitable remedy intended to restore the plaintiff to the position he or she would have occupied save for the discrimination, and noting that given the plaintiff's high salary, it was unlikely he would ever find comparable employment because of his lack of education).

The Second, Third, Sixth, and Seventh Circuits have identified as potentially pertinent considerations factors such as the plaintiff's duty to mitigate damages, the availability of comparable employment opportunities, the period of time it will reasonably take to secure new employment, the plaintiff's work and life expectancy, and the plaintiff's status as an at-will employee. *Paolella v. Browning–Ferris, Inc.*, 158 F.3d 183, 194–95 n. 13 (3d Cir.1998); *Schwartz v. Gregori*, 45 F.3d 1017, 1023 (6th Cir.), *cert. denied*, 516 U.S. 819, 116 S.Ct. 77, 133 L.Ed.2d 36 (1995); *Downes*, 41 F.3d at 1141; *Roush*, 10 F.3d at 399; *Hybert v. Hearst Corp.*, 900 F.2d 1050, 1055· (7th Cir.1990); *Shore v. Federal Express Corp.*, 777 F.2d 1155, 1160 (6th Cir. 1985); *Dunlap–McCuller v. Riese Org.*, 980 F.2d 153, 159 (2d Cir.1992). Similarly the United States Court of Appeals for the District of Columbia has instructed that a plain-

---

**5.** Whether the court or the jury should consider these factors is the subject of some debate. Recently, in *Newhouse v. McCormick & Co., Inc.*, 110 F.3d 635, 642–43 (8th Cir.1997), the court confirmed that in this circuit, the determination of the amount of front pay to be awarded in a given case is an equitable issue for the court. Surveying other circuit courts of appeals, the *Newhouse* court made the following observations:

> Our sister circuits have expressed differing opinions on the question of whether a jury can determine the amount of front pay. The Third, Fifth, Sixth, and Ninth Circuits have held that

> while the district court must initially determine whether a plaintiff is entitled to front pay in lieu of reinstatement, the jury determines the amount of front pay damages.... To the contrary, the Second, Fourth, Seventh, and Tenth Circuits hold that both the determination of whether front pay is appropriate and the determination of how much front pay to award are questions for the district court's equitable discretion, and thus, the issue of the amount of front pay should not be submitted to the jury.... We agree with this rule ...

> *Id.* at 642 (internal citations omitted).

tiff's age, the plaintiff's "entirely reasonable intention" to remain with the offending employer until retirement, the length of time other employees typically held the position lost to the plaintiff-employee, and the plaintiff's efforts to mitigate damages may be helpful in front pay determinations. *Barbour*, 48 F.3d at 1280.

The United States Courts of Appeals for the Ninth and Eleventh Circuits have approved consideration of a plaintiff-employee's inability to work for the defendant employer, or the plaintiff-employee's inability to work at all in assessing front pay awards. *See Lewis*, 953 F.2d at 1281 (observing that "[i]n this case, the uncontradicted evidence showed that [the plaintiff] could not return to his former work environment without suffering a return of the symptoms that so debilitated him in the first place."); *Ortiz v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 852 F.2d 383, 387 (9th Cir.1987) (approving front pay remedy where medical evidence established plaintiff could not return to work at all or, in the opinion of one doctor, could not to return to work for defendant-employer).

Although the factors set forth above have been utilized to determine front pay awards in the context of both Title VII cases and ADEA cases, one factor has remained controversial in its application to both acts. This factor is the consideration of any liquidated damages (under the ADEA) or punitive damages (under Title VII) that have been awarded to the plaintiff. The ADEA, unlike Title VII, provides for the recovery of "liquidated" damages. 29 U.S.C. § 626(b). The United States Court of Appeals for the Eighth Circuit has defined "liquidated damages" under the ADEA as an award "equal to the actual damages awarded." *Bethea v. Levi Strauss & Co.*, 916 F.2d 453, 454 n. 3 (citing 29 U.S.C. § 626(b)). Section 626(b) "doubles the compensatory award [in situations where the violation of the ADEA is found to be willful] and is essentially punitive in nature." *Rademaker v. State of Nebraska*, 906 F.2d 1309, 1313 (8th Cir.1990) (citing *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 125, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985)).

At least three circuit courts of appeals—the First, Fifth, and the Seventh—have explicitly required the trial court to consider the amount of any liquidated damage award made to a plaintiff to determine whether an additional award of front pay would be inappropriate or excessive.[6] *Walther v. Lone Star Gas Co.*, 952 F.2d 119, 127 (5th Cir. 1992) (ADEA case); *Hybert v. Hearst Corp.*, 900 F.2d 1050, 1056 (7th Cir.1990) (ADEA case); *Wildman v.. Lerner Stores Corp.*, 771 F.2d 605, 616 (1st Cir.1985) (ADEA case). Title VII, of course, does not contain a liquidated damages provision. It does, however, provide for the recovery of punitive damages. 42 U.S.C. § 1981a. Reasoning that the impact of punitive damages in a Title VII case could—like the impact of an award of liquidated damages in an ADEA case—indicate that an additional award of front pay is inappropriate or excessive, the United States Court of Appeals for the Fifth Circuit has adopted this factor in the context of Title VII. *Hadley v. VAM P T S*, 44 F.3d 372, 376 (5th Cir.1995). It is far from clear whether other courts will adopt the reasoning set forth in *Hadley*. However, it appears that the United States Court of Appeals for the Eighth Circuit would be unlikely to put much, if any, emphasis on this factor in a Title VII case. *See Newhouse*, 110 F.3d at 643 (declining to require district court to consider this factor and observing in an ADEA case that "liquidated damages are punitive in nature under the ADEA ... [whereas] [f]ront pay ... is equitable relief ... and the resulting award of liquidated damages simply does not affect the ... court's determination of appropriate equitable relief."); *cf. Carey v. Mt. Desert Island Hosp.*, 156 F.3d 31, 41 (1st Cir.1998) (observing that it would be inappropriate in Title VII case to consider the amount of punitive damages awarded rather than the statutorily capped damage award in denying front pay because the former would not be an accurate reflection of what the plaintiff would receive).

A synthesis of the cases discussed above suggest that the following factors may

---

6. Since *Hearst,* the United States Court of Appeals for the Seventh Circuit has indicated disfavor with placing too much emphasis on the pres-

ence or absence of a liquidated damage award. *Price v. Marshall Erdman & Assoc., Inc.,* 966 F.2d 320, 326 (7th Cir.1992).

assist the district court in calculating a front pay award:

- (1) the plaintiff's age, *Barbour*, 48 F.3d at 1280;
- (2) the length of time the plaintiff was employed by the defendant employer, *Standley*, 5 F.3d at 322;
- (3) the likelihood the employment would have continued absent the discrimination, *Barbour*, 48 F.3d at 1280; *Standley*, 5 F.3d at 322;
- (4) the length of time it will take the plaintiff, using reasonable effort, to secure comparable employment, *Paolella*, 158 F.3d at 194–95 n. 13; *Kelley*, 140 F.3d at 355 n. 12; *HBE Corp.*, 135 F.3d at 555; *Downes*, 41 F.3d at 1141; *Roush*, 10 F.3d at 399; *Standley*, 5 F.3d at 322; *Hukkanen*, 3 F.3d at 286; *Shore*, 777 F.2d at 1160;
- (5) the plaintiff's work and life expectancy, *Paolella*, 158 F.3d at 194–95 n. 13; *Downes*, 41 F.3d at 1141; *Roush*, 10 F.3d at 399; *Shore*, 777 F.2d at 1160;
- (6) the plaintiff's status as an at-will-employee, *Barbour*, 48 F.3d at 1280; *Schwartz*, 45 F.3d at 1023;
- (7) the length of time other employees typically held the position lost, *Barbour*, 48 F.3d at 1280;
- (8) the plaintiff's ability to work, *Lewis*, 953 F.2d at 1281; *Ortiz*, 852 F.2d at 387;
- (9) the plaintiff's ability to work for the defendant-employer, *Id.*;
- (10) the employee's efforts to mitigate damages, *Paolella*, 158 F.3d at 194–95 n. 13; *Barbour*, 48 F.3d at 1280; *Downes*, 41 F.3d at 1141; *Roush*, 10 F.3d at 399; *Shore*, 777 F.2d at 1160; and
- (11) the amount of any liquidated or punitive damage award made to the plaintiff, *Hadley*, 44 F.3d at 376; *Walther*, 952 F.2d at 127; *Hybert*, 900 F.2d at 1056; *Wildman*, 771 F.2d at 616.

Of course this list is not all-inclusive. The district court must "consider all the circumstances involved in determining appropriate equitable relief." *Denesha*, 161 F.3d at 501 (8th Cir.1998); *see also*, *Shore*, 777 F.2d at 1160 (declaring that the court must consider " 'other factors that are pertinent on prospective damage awards.' " quoting *Koyen v.*

*Consolidated Edison Co.*, 560 F.Supp. 1161, 1168–69 (S.D.N.Y.1983)).

### B. Ogden's Request For Prospective Equitable Relief

Ogden has requested prospective equitable relief in the form of eight years front pay. The starting point for the court's analysis of this request is a consideration of whether the "preferred" remedy of reinstatement is appropriate in this case. *See Newhouse*, 110 F.3d at 641; *Brooks v. Woodline Motor Freight, Inc.*, 852 F.2d 1061, 1065 (8th Cir. 1988).

#### 1. Reinstatement

 Neither of the parties have requested or addressed the remedy of reinstatement. Of course, Ogden's failure to request reinstatement is not necessarily fatal to her front pay claim. *See Williams*, 964 F.2d at 730; *Roush*, 10 F.3d at 398 n. 8. However, before the court may consider the propriety of a front pay award, it must be assured that reinstatement is an infeasible or otherwise inappropriate remedy. *See Williams*, 964 F.2d at 730 (remanding issue of front pay and reminding magistrate judge that front pay should not be awarded "unless reinstatement is impossible or impracticable ...." quoting *Wildman*, 771 F.2d at 616.). The court has previously identified some of the factors potentially useful in determining whether reinstatement is an appropriate remedy. The court will now turn to an application of those factors to the present case.

*Factors (1)—employer still in business; (2)—comparable position available; and (3)—displacement of innocent employees*

 The first factor in the analysis, the defendant employer's continuation in business, weighs in favor of reinstatement. This is so because the court finds that Wax Works continues to own and operate the Disc Jockey music store where Ogden was employed. *See Duke*, 928 F.2d at 1423. Similarly, the second factor—the availability of a comparable position—weighs in favor of reinstatement. *See Roush*, 10 F.3d at 398; *Duke*, 928 F.2d at 1423. The court finds that managerial positions of the type Ogden occupied are

still available in the Disc Jockey Stores. However, these factors are counter-balanced, indeed outweighed, by the third factor—whether an innocent employee would be displaced by reinstatement. The court finds that Ogden's former position has been filled by an employee "innocent" to the discrimination complained of. Reinstatement would lead to the displacement of this employee, suggesting that the remedy is inappropriate here. *See Ray*, 51 F.3d at 1254; *Roush*, 10 F.3d at 398; *McKnight*, 973 F.2d at 1370–71.

### Factor (4)—whether the parties agree that reinstatement is a viable remedy

Similarly, the fourth factor—whether the parties agree that reinstatement is a viable remedy—also weighs substantially against reinstatement. *See Ray*, 51 F.3d at 1254; *Roush*, 10 F.3d at 398; *Best v. Shell Oil Co.*, 4 F.Supp.2d 770, 777 (N.D.Ill.1998) (turning directly to the issue of front pay after acknowledging the parties' agreement that reinstatement was not appropriate). Apparently, the parties agree that reinstatement is not a viable remedy in this case. The court concludes as much given the parties' failure to request or address it. In this court's view, the failure of either party to request reinstatement is a significant consideration in the analysis and both parties' failure to request it is virtually dispositive on the issue. This is so because the parties are in the best position to gauge the feasibility or practicality of the remedy.

### Factor (5)—hostility between the parties

Factor five concerns the hostility caused by the underlying events as well as the attendant litigation. *See Cowan*, 140 F.3d at 1160; *Ray*, 51 F.3d at 1254; *Roush*, 10 F.3d at 398; *Standley*, 5 F.3d at 322; *McKnight*, 973 F.2d at 1370–71; *Lewis*, 953 F.2d at 1280; *Duke*, 928 F.2d at 1423. Here, there can be no question that the events underlying Ogden's claim of employment discrimination have resulted in a substantial degree of hostility between the parties. Additionally, the court finds that a greater degree of hostility than is normally engendered between litigants is a byproduct of this lawsuit. These considerations suggest the impropriety of reinstatement, and convince the court that a productive working relationship between these parties would be impossible.

### Factors (6)—hostility in workplace; (7)—plaintiff's acquisition of similar work, and (8)—change in plaintiff's career goals

The court is mindful that factors such as whether reinstatement would arouse hostility in the workplace, *See, e.g., Cowan*, 140 F.3d at 1160; whether the plaintiff has acquired similar work, *Roush*, 10 F.3d at 398; and whether the plaintiff's career goals have changed since the unlawful termination, *McKnight*, 973 F.2d at 1370–71; may be relevant to the determination of the propriety of reinstatement. However, the court has reviewed the record established in this case and finds that these factors add little if anything to the analysis. This is so largely because there is no evidence to support them as relevant considerations. There was no evidence regarding the impact Ogden's reinstatement would have on current employees in the local Disc Jockey store. Of course, there was evidence regarding the hostility between Ogden and members of upper management—discussed under factor (5) *supra*—however, there is no basis from which to infer that Ogden's return would or would not arouse hostility at the local Disc Jockey. The court therefore finds this factor to be neutral in the analysis. Similarly, although the court finds that Ogden has not acquired similar work, the court also finds that Ogden is presently unable to perform similar work. Under these circumstances, this factor is neutral in the analysis. Finally, there was no evidence regarding a change in Ogden's career goals since the unlawful termination. Again, the court finds this factor to be neutral in the analysis.

### Factor (9)—plaintiff's ability to return to work for employer

Perhaps the strongest factor disfavoring reinstatement in this case is the ninth factor—the plaintiff's ability to return to work for the defendant-employer. *See Newhouse*, 110 F.3d at 641; *Lewis*, 953 F.2d at 1280. Ogden testified at length during trial to the devastating impact the events at Wax Works—and the ultimate loss of her position—levied on her self-esteem and self-worth. This testimony was supported by the testimony of Ogden's expert witness, Kriemhild Oudhousden. Under the circumstances

of this case, the court finds this factor to be particularly important, and finds the observations made by the district court in *Eivins v. Adventist Health System/Eastern & Middle America, Inc.*, 660 F.Supp. 1255 (D.Kan. 1987), to be especially apropos:

> [P]laintiff testified, and the evidence indicated, that his self worth was crushed by his dismissal. It appears to this court that after a person has gone through an experience such as that suffered by plaintiff in this case, it would be extremely difficult, if not completely unreasonable, to expect diligent work and loyalty to the defendant.

*Eivins*, 660 F.Supp. at 1263. The court finds that Ogden has in fact suffered a devastating blow to her self-worth and to her self-esteem aggravated by the actions of Wax Works. Reinstatement under these conditions would be counter-productive to Wax Works and an empty remedy to Ogden.

Having reviewed the evidence presented both at trial and during the post-verdict evidentiary hearing, the court is left with the firm conviction that reinstatement is not an appropriate remedy in this case.[7] The court will therefore turn to Ogden's request for front pay.

### 2. Front pay

Ogden seeks front pay in the amount of $229,989.25, covering the period from the middle of November, 1998, to the end of the year 2006. She asserts that this time frame reflects the period she would have remained in Wax Works' employ absent the discrimination. Ogden arrived at the sum of $229,989.25 by calculating the salary she estimated she would have earned at Wax Works over this period (plus bonus and insurance benefits) less the amount she projects to earn through her two part-time jobs. As with the analysis regarding reinstatement, the court will consider factors traditionally approved by other courts in a front pay determination. Additionally, the court will consider factors it deems relevant under the circumstances of this case.

### Factor (1)—plaintiff's age

The first factor in the analysis is a consideration of the plaintiff's age. *See Barbour*, 48 F.3d at 1280. The court finds this factor to have no bearing on its front pay determination because no evidence was offered regarding the significance of Ogden's age to her proposed front pay request.

### Factor (2)—length of employment

The evidence reveals that Ogden was employed by Wax Works for approximately eight years. The court finds that the relative longevity of Ogden's employment with Wax Works weighs in favor of a front pay award. *See Standley*, 5 F.3d at 322.

### Factors (3)—likelihood plaintiff would have remained in her position; and (6)—plaintiff's status as an at-will-employee

The court recognizes that Ogden was an at-will-employee. However, the court finds that absent the discrimination, it is highly likely Ogden would have remained in her position with Wax Works for some time to come. Although this factor is subject to some speculation, *see Barbour*, 48 F.3d at 1280; *Standley*, 5 F.3d at 322, there is no evidence to suggest Wax Works was unhappy with Ogden's performance or otherwise contemplated or desired her departure. Moreover, undisputed evidence in the record indicates that Ogden found her position at Disc Jockey to be challenging, fulfilling, and enjoyable. The court finds through Ogden's testimony, as well as that of her expert, that Ogden derived much of her self-esteem from the success she experienced in her position at Disc Jockey. This finding is supported by Ogden's employment evaluations and awards which confirm her standing as a superb employee. Again, this factor indicates an award of front pay is appropriate. *See Barbour*, 48 F.3d at 1280; *Schwartz*, 45 F.3d at 1023.

### Factor (4)—length of time necessary to secure comparable employment

The court is persuaded that Ogden is not only presently unable to work full-time, but

---

**7.** The United States Court of Appeals for the Seventh Circuit recently endorsed the procedure—utilized in this case—of taking front pay evidence outside the presence of the jury. *Downes*, 41 F.3d at 1141. As the *Downes* court observed, "it would be somewhat incongrous to require evidence of front pay to be presented at trial when the issue of front pay is not ... before the jury but is the subject of an equitable determination by the court." *Id.*

also incapable of performing the managerial duties she performed as the store manager of Disc Jockey. This factor supports an award of front pay. *See Paolella,* 158 F.3d at 194–95 n. 13; *Kelley,* 140 F.3d at 355 n. 12; *HBE Corp.,* 135 F.3d at 555; *Downes,* 41 F.3d at 1141; *Roush,* 10 F.3d at 399; *Standley,* 5 F.3d at 322.

**Factors (5)—plaintiff's work and life expectancy; and (7) the length of time other employees typically held the position lost**

The court finds the fifth factor—Ogden's life and work expectancy, *see Paolella,* 158 F.3d at 194–95 n. 13—and the seventh factor—the length of time other employees typically hold the position Ogden lost, *see Barbour,* 48 F.3d at 1280—to be neutral in the front pay analysis. There was no testimony regarding the significance of Ogden's work and life expectancy to her ability to secure comparable employment. Absent some evidence on this factor, the court would be left to its own devices to speculate as to the impact this consideration may or may not have on Ogden's ability to secure employment. The court declines to engage in such speculation. Similarly, no evidence was presented regarding the length of time other employees typically hold the managerial position Ogden lost. Again, the court is unwilling to speculate on this factor and therefore considers it to be a neutral consideration in the determination of the front pay award.

**Factors (8)—ability to return to full-time work; and (9)—ability to return to work for defendant-employer**

The court also finds—on the basis of Ogden's testimony and the testimony of her expert witness—that Ogden's ability to work full-time is presently foreclosed by the mental and emotional trauma she continues to suffer as a result of post-traumatic stress disorder. *See Lewis,* 953 F.2d at 1281; *Ortiz,* 852 F.2d at 387; *Eivins,* 660 F.Supp. at 1263. Even if Ogden were able to work full-time, the court concludes that under no circumstances is Ogden physically, mentally, or emotionally capable of returning to work for Wax Works—even if such an opportunity were presented. *See Lewis,* 953 F.2d at

1281; *Ortiz,* 852 F.2d at 387; *Eivins,* 660 F.Supp. at 1263.

**Factor (10)—plaintiff's effort to mitigate damages**

Wax Works takes issue with Ogden's efforts to mitigate her damages. Specifically, Wax Works complains that Ogden has failed to seek full-time managerial work in favor of two part-time jobs. This argument misses the mark. As stated previously, the court finds that although Ogden has not sought full-time managerial employment, she is presently unable—physically, mentally, or emotionally—to meet the rigors of such work. Instead, Ogden has secured two part-time jobs—one in sales, one in light janitorial work—to mitigate her damages. Neither of these positions carries noteworthy responsibility. The court finds that Ogden is able to engage in these jobs largely because of the unusually flexible and supportive nature of her employers. Indeed, one of these employers is actually a former employee of Ogden's from Disc Jockey. Under the circumstances, Ogden has put forth a reasonable effort to mitigate her damages.[8] This factor is an appropriate consideration in the award of front pay, *see Paolella,* 158 F.3d at 194–95 n. 13; *Barbour,* 48 F.3d at 1280; *Downes,* 41 F.3d at 1141; *Roush,* 10 F.3d at 399; *Shore,* 777 F.2d at 1160, and the court finds that it weighs in favor of such an award.

**Factor (11)—the amount of any punitive damage award**

The court must also consider what impact, if any, Ogden's punitive damage award has on the analysis. As discussed previously, several circuit courts of appeals have required the trial court to consider liquidated damage awards in fashioning front pay remedies under the ADEA. *Walther,* 952 F.2d at 127; *Hybert,* 900 F.2d at 1056; *Wildman,* 771 F.2d at 616. It is unclear whether the same consideration should be afforded to punitive damage awards in Title VII cases. In this case, the jury awarded Ogden punitive damages in the sum of $500,000.00. The court notes that because of the statutory cap,

---

8. As a general rule, although a plaintiff has a duty to mitigate damages, the burden of proof on the mitigation issue rests with the defendant-wrongdoer. *Deffenbaugh–Williams v. Wal–Mart*

*Stores, Inc.,* 156 F.3d 581, 591 (5th Cir.1998); *Migis v. Pearle Vision, Inc.,* 135 F.3d 1041, 1045 (5th Cir.1998); *Booker v. Taylor Milk Co., Inc.,* 64 F.3d 860, 864 (3d Cir.1995).

*see* 42 U.S.C. § 1981a(b)(3)(D), Ogden is likely to recover less than two-fifths of this award.

The court concludes that consideration of the amount of punitive damages awarded in this case would be an improper factor in fashioning the equitable relief of front pay. Although at least one court has justified the applicability of this factor by analogizing liquidated damages under the ADEA to punitive damages under Title VII, *see Hadley,* 44 F.3d at 376, this court believes the sounder course is to focus on the "make-whole" purposes of prospective equitable relief. Punitive damages, by their nature, are intended to punish the defendant for its discriminatory conduct and to deter the defendant from engaging in like conduct in the future. On the other hand, the purpose of front pay is to make the plaintiff whole. *See Cowan,* 140 F.3d at 1160; *Standley,* 5 F.3d at 322. Obviously, these remedies are designed to achieve very different goals. In this court's view, the amount of punitive damages awarded is simply a neutral consideration in the front pay analysis. *Cf. Newhouse,* 110 F.3d at 643 (declaring in ADEA case that the amount of liquidated damages awarded "does not affect the ... court's determination of appropriate equitable relief.").

▮ After applying factors considered by other courts in determining the propriety of front pay awards, as well as other factors pertinent to the circumstances of this case, the court is persuaded that a front pay award is warranted here. Having made this determination, the court will turn to its calculation of the proper amount and duration of Ogden's front pay award.

### 3. Calculation of the front pay award

▮ The first step in calculating Ogden's front pay award is to determine its proper duration. The court recognizes that a front pay award will contain some degree of speculation. However, the award should not be "unduly speculative." *Barbour,* 48 F.3d at 1280; *McKnight,* 973 F.2d at 1372. Ogden has requested almost eight years of front pay compensation but has offered only her testimony to justify such a lengthy award. Mindful that "[t]he longer a proposed front pay period, the more speculative the damages become," *McKnight,* 973 F.2d at 1372,

the court is not convinced that Ogden's testimony—without more—provides an adequate basis to support the length of front pay requested. *See Partington v. Broyhill Furniture Industries, Inc.,* 999 F.2d 269, 273 (7th Cir.1993) (observing that as a general proposition, "[t]he amount of proof required to establish damages will tend ... to be proportional to the amount of damages claimed.") In fact, as alluded to in the preceding section, the court finds that several factors support a reduction in the length of Ogden's proposed award. At the post-verdict hearing, Ogden explained that she based her request for eight years of front pay on two factors. The first factor was her estimation of the length of time she would have remained employed by Wax Works. The second factor was the length of time she estimated it would take her to earn a college degree—a prerequisite, in her view, to attaining employment at the same compensation level she earned at Disc Jockey.

The court agrees that Ogden may well have remained in her position at Disc Jockey for eight years absent the discrimination. However, the court is unwilling to adopt the eight-year figure as a proper approximation for the front pay award because the court finds that it is more likely than not that Ogden will secure comparable employment in substantially less time. The court finds speculative Ogden's assertion that she will be unable to secure comparable employment absent a college degree. Ogden did not present any evidence, such as the testimony of a vocational expert or a job counselor, to support this claim, nor does the record contain any evidence from which the court could infer such a conclusion. *Cf. Kelley,* 140 F.3d at 355 n. 12 (noting in ADEA case that "[g]iven [the plaintiff's] $100,000 salary and that he would probably never gain comparable employment because of his lack of education, we find no abuse in discretion in the district court's decision to award $1,000,000 in front pay.") Even though the court has already concluded that insufficient evidence exists to support Ogden's assertion that she needs a college degree to secure comparable employment, the court further finds that the expense of a college education should not be borne by Wax Works under the guise of

front pay. *Accord Shore*, 777 F.2d at 1160 (stating "[t]he cost of obtaining a college degree, cited by the plaintiff as a basis for the front pay award, cannot be considered a post-judgment effect of defendant's discrimination."). Of course, under different circumstances and with proper proof, time to obtain additional education—even a college degree—may well be appropriate.

After considering the evidence presented, the court finds that an eight year front pay award would be unduly speculative and otherwise excessive. The court concludes that a three year front pay award would be more appropriate under the circumstances of this case. Three years affords Ogden a reasonable amount of time to sufficiently recover from her post-traumatic stress disorder such that she could assume the responsibility commensurate with a retail management position like the one she occupied at Disc Jockey. Therefore, an award of three years' front pay is appropriate because it will strike the proper balance between the need to make Ogden "whole" and the need to avoid unduly speculative front pay awards.

The next step is to calculate Ogden's estimated yearly income from Wax Works for these three years less her mitigation damages. The starting point for this calculation is the base rate Ogden would have earned had she remained at Disc Jockey. The evidence reflects that in the years immediately preceding her constructive discharge, Ogden was earning an annual base salary between $22,000.00 and $25,000.00 with yearly bonuses ranging from $6,000.00 to $7,000.00. In 1995, Wax Works implemented a new salary and bonus program, based on yearly Disc Jockey store sales, which is set forth in Trial Exhibit 8. The parties agree that this compensation structure must guide the figures calculated here.

Ogden has calculated her projected yearly salary from the highest end of the salary range for managers in Disc Jockey stores with annual sales of at least 1.5 million dollars ($35,000). To this figure she has added a $1,000.00 per year raise—beginning in 1996—for a starting sum of $38,000.00. Prior to the implementation of the new salary and bonus program, Ogden received annual raises in the sum of $1,000.00. Additionally, Ogden has calculated the highest yearly bonus attainable under the compensation program ($2,000.00) as well as $1,200.00 per year for the insurance she had as a Wax Works employee.

Wax Works disputes these figures. As an initial matter, Wax Works argues that Ogden's former store has never had sales in the 1.5 million dollar category, but has instead consistently generated between 1 and 1.4 million dollars in annual sales. On this basis, Wax Works contends that Ogden's salary range would be between $25,000.00 and $30,-000.00. The court agrees. The evidence submitted at trial reveals that although the Disc Jockey store consistently produced between 1 and 1.4 million dollars in sales, it has not met the 1.5 million dollar mark. The court also agrees with Wax Works' assertion that the salary ranges presented in Exhibit 8 reflect salary *caps*, not starting points. Ogden has offered no evidence to refute this determination. Accordingly, the court finds that the proper salary range for assessing Ogden's base compensation is $25,000.00 to $30,000.00. Recognizing that Ogden had been with Wax Works for many years at the time this compensation plan went into effect and had a solid employment record with the company, the court finds that her base salary should be figured at the top end of the range, or $30,000.00.

Wax Works also takes issue with Ogden's projected yearly bonus figure. Again, Wax Works complains that Ogden's requested $2,000.00 yearly bonus is figured from the 1.5 million dollar sales category instead of the 1 to 1.5 million dollar category which would support a bonus of $1,500.00. The court agrees. Though Ogden may well "believe" that her store would have generated these sales under her leadership, the evidence does not support such a finding. The court concludes that the proper bonus figure is $1,500.00.

These findings add up to an annual income of $31,500.00 ($30,000.00 salary base plus $1,500.00 bonus). The next matter is the requested $1,200.00 per year for insurance benefits. Although Wax Works contends that insurance is a "benefit" not properly included in a front pay figure, it has offered no authority in support of this posi-

tion. The court finds that insurance is properly considered in a front pay award as part of the compensation package lost to the plaintiff-employee. *See Stratton v. Dep't for the Aging,* 132 F.3d 869, 882 (2d Cir.1997) (affirming award of front pay which included sum for fringe benefits); *Downes,* 41 F.3d at 1142 (finding no abuse of discretion when district court calculated *pro rata* shares of automobile expense and pension benefits to fashion front pay award); *Thornton v. Kaplan,* 961 F.Supp. 1433, 1441 (D.Colo.1996) (including calculation for fringe benefits in front pay award); *Metz v. Transit Mix, Inc.,* 692 F.Supp. 987, 991 (N.D.Ind.1988) (finding front pay award includes increased cost of health insurance); *Koyen,* 560 F.Supp. at 1169 (considering financial benefits in addition to salary in calculating front pay award); *cf. Paxton v. Union Nat'l Bank,* 688 F.2d 552, 574 (8th Cir.1982), *cert. denied,* 460 U.S. 1083, 103 S.Ct. 1772, 76 L.Ed.2d 345 (1983) (endorsing addition of fringe benefits to back pay award). The court is therefore left with a sum of $32,700.00. ($31,500.00 base salary and bonus plus $1,200.00 for insurance benefits).

From the $32,700.00 figure, the court must subtract Ogden's estimated mitigation earnings. Ogden projects that she will earn approximately $9,444.00 per year—not including raises—at her two part time jobs. This results in an adjusted figure of $23,256.00. The court has determined that Ogden shall receive a front pay award of three years spanning from November 1998 to November 2001. Multiplying the $23,256.00 figure by three, the court arrives at a sum of $69,-768.00.

▮ The final step in the front pay calculation is to reduce the award to present value. The parties have offered no evidence on this issue or otherwise suggested an appropriate discount method. Ogden and Wax Works have perhaps over-emphasized the desirability of avoiding a "graduate seminar on economic forecasting" by providing no guidance whatsoever on the issue. *See Rhodes v. Guiberson Oil Tools,* 82 F.3d 615, 622 (5th Cir.1996) (recognizing that "allowing the parties to argue over the applicable [discount] method could potentially 'convert the average trial into a graduate seminar on economic forecasting.'") Nevertheless, the court must consider what adjustment, if any, is necessary.

Courts have taken a variety of approaches to the adjustment issue. For example, some courts have required application of "discount tables" to assess the present value of front pay awards. *See, e.g., Suggs,* 72 F.3d at 1235 (reiterating the need to use the "discount tables" to reduce the amount of the award to present value). Other courts have simply instructed that a proper discount rate be used. *See, e.g., Barbour,* 48 F.3d at 1280 (stating "[a]ll that remained was for [the district court] to determine the appropriate duration of a front-pay award, ... to incorporate any proper salary increases, and then to determine the award's present value using an appropriate discount rate."); *Rhodes,* 82 F.3d at 622 (reaffirming the Fifth Circuit's requirement that "factfinders calculate damages resulting from lost future earnings according to a below-market-discount method."). Another method that has been endorsed by courts is what is known as the "total-offset method." Under this method, no discount to present value is required on the theory that "any interest rate which might otherwise drive a discount would be totally offset by such things as price inflation and real wage increases...." *Newhouse v. McCormick & Co.,* Inc., 910 F.Supp. 1451, 1457 (D.Neb.1996), *aff'd in part and rev'd in part,* 110 F.3d 635 (1997); *see also Jones & Laughlin Steel Corp. v. Pfeifer,* 462 U.S. 523, 544–46, 103 S.Ct. 2541, 76 L.Ed.2d 768 (1983) (discussing the "total offset" approach). A variation of the total-offset approach, approved by the United States Court of Appeals for the Second Circuit, is to refrain from calculating future salary increases into the front pay award, thereby obviating the need to discount the award to present value. *Stratton v. Dep't for the Aging for the City of New York,* 132 F.3d 869, 882 (2d Cir.1997).

Here, the court finds that given the relatively short duration of the front pay award, any interest that would be earned on the sum will be offset by inflation and future wage increases. Future wage increases have, of course, not been accounted for in the calcula-

tion. Therefore, the final sum of Ogden's front pay award is $69,768.00.

## III. CONCLUSION

Viewing a front pay award in isolation for the purpose of measuring its contribution toward the goals on an antidiscrimination statute is risky business. A front pay award—like any other single strand in a tapestry of relief—must be assessed as a part of the entire remedial fabric that the trial court has fashioned in a particular case.

*Lussier v. Runyon,* 50 F.3d 1103, 1112 (1st Cir.1995) (Seyla, J., writing for the court).

The court concludes that an award of prospective equitable relief is warranted in this case. However, the court finds that the "preferred" remedy of reinstatement is not an appropriate remedy under these facts. As an initial matter, the parties have agreed that reinstatement is infeasible or otherwise impracticable. Additionally, the court finds that reinstatement is inappropriate given the degree of hostility between the parties, the plaintiff's inability to return to work for the defendant-employer, and the fact that an "innocent" employee would likely be displaced by reinstatement.

The court further finds that an award of front pay is a necessary "strand in a tapestry of relief." *See Lussier,* 50 F.3d at 1112. This remedy is particularly important given the plaintiff's length of employment, the likelihood the plaintiff would have remained in her position absent the discrimination, the plaintiff's present inability to return to full-time work as well as her inability to return to work for the defendant-employer, and the length of time necessary for the plaintiff to attain comparable employment. Therefore, the court awards Ogden **three years of front pay** spanning from November 1998 to November 2001, in the sum of **$69,768.00.**

**IT IS SO ORDERED.**