**In re COHO ENERGY, INC.; In re Coho Resources, Inc.; In re Coho Oil & Gas, Inc.; In re Interstate Natural Gas Company; In re Coho Louisiana Production Company; In re Coho Exploration, Inc., Debtors in Possession.**

**Nos. 399–35929–HCA–11, 399–35932–HCA–11, 399–35930–HCA–11, 399–35933–HCA–11, 399–35934–HCA–11, 399–35935–HCA–11.**

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

Aug. 23, 2001.

Kendra Karlock, The Law Office of Kendra Karlock, Martin K. Thomas, Thomas & Sobol, Dallas, TX, for Deborah Gaye Locke.

Michael W. Anglin, Richard Kobdish, Courtney Slatten Katzentein, Fulbright & Jaworski, L.L.P., Dallas, TX, for debtors in possession.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

HAROLD C. ABRAMSON, Bankruptcy Judge.

Came before the Court for trial on June 27 and June 29, 2001, the above named reorganized debtor's ("Coho's") Amended Objection to the Claim of Deborah Gaye Locke, filed on January 3, 2001 and Coho's Motion to Dismiss, filed on June 25, 2001. The Court makes the following findings of fact and conclusions of law pursuant to Federal Rules of Bankruptcy Procedure 7052 and 9014:

### I. FINDINGS OF FACT

1. All findings of fact that may be deemed conclusions of law shall be considered conclusions of law.

2. Coho Oil and Gas, Inc., one of the reorganized debtors, was formed in December, 1997 to acquire certain oil producing properties in Oklahoma from Amoco Production Company ("Amoco").

3. The purchase agreement between Coho and Amoco provided that Coho "reasonably expects to make offers of employment to many" of the Amoco employees who worked on the Oklahoma properties.

4. During the period from late 1997 through early 1998, Coho Oil and Gas, Inc. had to create and staff its entire organization. The hiring process was not a formal process.

5. Coho was a much smaller company than Amoco and, therefore, was to be organized and operated differently and staffed more thinly than Amoco.

6. As part of the agreement between Coho and Amoco, Coho agreed to employ a portion of Amoco employees who worked on the properties.

7. At that time, Coho did not have an established "maintenance crew" whose duties solely related to the maintenance and repair of wells and related equipment. Nor did Coho utilize an "automation system" in its Oklahoma operations.

8. Deborah Gaye Locke ("Locke") is a female over the age of 40. Her date of birth is May 11, 1952.

9. Locke worked for Amoco Production Co. ("Amoco") in various oil fields in Oklahoma for approximately sixteen (16) years. From about August 1981 through 1997, Locke held the position of Field Technician/Pumper. She had previously worked for Amoco as a Roustabout.

10. Locke had worked for many years on a portion of the properties that Coho purchased from Amoco.

11. On December 16, 1997, all Amoco employees desiring employment with Coho in the Oklahoma properties were provided employment applications by Coho.

12. The form of employment application provided by Coho to job applicants on December 16, 1997 did not ask for the applicant's date of birth.

13. Coho expected each "Pumper" employed by Coho to handle all of the duties and responsibilities of that position, including maintenance and repair work, without assistance from other employees.

14. Several Field Technicians from Amoco applied for employment at Coho.

15. Locke applied for employment at Coho on or about December 16, 1997.

16. On December 17, 1997, numerous candidates were interviewed by Coho, including Locke.

17. Coho did not ask the age of any job applicant, including Locke, during the interviews that took place in Oklahoma on December 17, 1997.

18. As part of the hiring process, Coho conducted informal "reference investigations" by requesting Amoco supervisors, managers, and others to recommend suitable candidates to staff Coho's operations.

19. Locke's supervisor at Amoco was Fred Edens, ("Edens"), an engineer.

20. Mr. Edens did not recommend Locke as a possible hire by Coho in his December 17, 1997 interview with Coho.

21. On January 9, 1998, after consideration of each application, the interviews and the "reference investigations," Coho sent offer letters to some but not all applicants.

22. Although Locke had applied, was interviewed, and was considered for a "Pumper" position with Coho, she did not receive an offer of employment.

23. In January and February of 1998, Coho hired three females to work in its

newly acquired Oklahoma operations. The only other female to apply for a "Pumper" position with Coho withdrew her application during her December 17, 1997 interview.

24. Coho chose not to hire five males who applied for an oilfield position with Coho on December 17, 1997.

25. Two thirds of the "Pumpers" hired by Coho in January and February of 1998 were 40 years of age or older.

26. The Court accepts Mr. Ruley's testimony that Coho based its decision not to hire Locke on the following facts:

(a) Locke had not been recommended by any employees of Amoco during the "reference investigations," including her direct supervisor and her co-workers;

(b) Unlike Amoco, Coho would require its pumpers to perform most if not all of the manual labor necessary to maintain and repair wells and production, water and gas lines. The maintenance and repair duties would often involve heavy lifting and other manual labor;

(c) Coho's "reference investigations" revealed that Locke had required assistance from other employees in the performance of her maintenance and repair duties and responsibilities in a similar position for Amoco;

(d) It appeared from Locke's written application, resume and interview that she did not have sufficient maintenance and repair experience to satisfy Coho's needs.

27. The testimony of Ms. Locke was difficult to find credible in light of her using fabricated photographs of her handling electrical fuses without gloves and erroneously placing coverings on an oil pipe, while on the property of Coho without permission to enter the property.

28. The testimony of Mr. Ruley and Mr. Guillory, former human resource personnel at Coho, was credible. Neither had an axe to grind or liability in this matter. Mr Guillory is now with another employer.

29. Coho did not fail or refuse to hire, or otherwise discriminate against Locke on the basis of her sex when it did not extend an offer of employment to her in January, 1998.

30. Coho did not fail or refuse to hire, or otherwise discriminate against Locke on the basis of her age when it did not extend an offer of employment to her in January, 1998.

***The Equal Employment Opportunity Commission ("EEOC") Charge***

31. On or about January 9, 1998, Locke learned that she would not be receiving a job offer from Coho.

32. In May 1998, Locke retained counsel to represent her in a claim of discrimination against Coho. Locke sent various discrimination forms and affidavits to the EEOC on or about May 29, 1998. However, Locke's attorney learned in October 1998 that the EEOC had no record of her case.

33. Locke's discrimination forms and affidavits were re-mailed to the EEOC on or about October 22, 1998.

34. On or around November 6, 1998, 300 days had passed since Locke learned that she would not be hired by Coho.

35. On or about December 23, 1998, Locke signed her charge of discrimination, and on or about January 7, 1999, filed same with the EEOC alleging age and sex discrimination under Title VII.

36. There was no evidence presented that the EEOC treated Locke's intake questionnaire as a Charge, nor was there evidence presented that the EEOC relied on the questionnaire to inform the employer that a charge had been filed.

37. Locke filed her Charge more than 300 days after she learned that she would not be hired.

38. However, due to the confusion with the EEOC regarding Ms. Locke's original filing and based on Counsel's diligence in immediately re-sending the appropriate forms to the EEOC upon his discovery of the error before the 300 days expired, the Court finds that equitable tolling of the statutes' time limits is warranted and Locke's Charge should be deemed as timely filed.

## II. CONCLUSIONS OF LAW

1. All conclusions of law that may be deemed findings of fact shall be considered findings of fact.

2. This is a core proceeding arising under 11 U.S.C. § 157(b)(2)(B) & (O).

3. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1334 and 157.

4. Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e–2(a)(1), states that:

It shall be an unlawful employment practice for an employer ... to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

5. The Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a)(1), states that:

It shall be unlawful for an employer ... to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.

6. Section 631(a) of the ADEA limits the age to individuals who are at least 40 years old.

## Title VII and ADEA Time Limitations for Filing a Charge

7. Section 2000e–5(e)(1) of Title VII provides that:

A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred ..., except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred ...

8. Section 626(d) of the ADEA provides that:

No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission. Such a charge shall be filed—

(1) within 180 days after the alleged unlawful practice occurred; or

(2) in a case to which section 633(b) of this title applies, within 300 days after the alleged unlawful practice occurred ...

9. There is a split among the circuits as to whether the timely filing of an unverified intake questionnaire with the EEOC is sufficient to constitute the plaintiff's charge. *See, e.g., Downes v. Volkswagen of America, Inc.,* 41 F.3d 1132, 1138 (7th Cir.1994) (holding that an intake question-

naire constituted a charge, despite the fact that the EEOC failed to assign a charge number to the case, process the charge, investigate the allegations or notify the employer of the action); *but see, e.g., Whitmore v. O'Connor Mgmt., Inc.,* 156 F.3d 796, 799 (8th Cir.1998) (stating that the general rule in Title VII cases is that unverified intake questionnaires do not constitute a formal charge.).

10. The Fifth Circuit construes "employment discrimination charges with the 'utmost liberality,' bearing in mind that such charges are generally prepared by laymen untutored in the rules of pleading." *Price v. Southwestern Bell Telephone Co.,* 687 F.2d 74, 78 (5th Cir.1982). The principal function of the administrative charge is to provide an adequate factual basis for the Commission to initiate investigatory and conciliatory procedures contemplated by Title VII. *Id.*

11. In *Price,* the Fifth Circuit held that the EEOC's treatment of a pro se claimant's unverified intake questionnaire was relevant to the determination of whether it may be viewed as a charge for purposes of meeting the filing limitation's period. 687 F.2d at 78–79. The Court found it relevant that the EEOC treated the filing as a charge and notified the employer that a charge had been filed, thereby fulfilling the Congressional purpose for imposing a filing limitation; the provision of "prompt notice to the employer." *Id.*

12. In contrast, in this case, Locke had an attorney to assist in the preparation and sending of the appropriate forms to the EEOC. More importantly, Locke did not put on evidence to indicate that the EEOC treated her unverified intake questionnaire as a Charge, or whether the EEOC relied on the questionnaire to noti-fy the employer that a Charge had been filed. Therefore, this Court holds that Locke's unverified intake questionnaire does not constitute a Charge.

13. However, the 300 days proscribed by Title VII and ADEA operates as a statute of limitations and is, thus, subject to equitable tolling. *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393–95, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982); *Blumberg v. HCA Management Co., Inc.,* 848 F.2d 642, 644 (5th Cir.1988).

14. The claimant bears the burden of justifying equitable tolling. *Hood v. Sears Roebuck & Co.,* 168 F.3d 231, 232 (5th Cir.1999) (claimant bears the burden in Title VII cases); *Blumberg,* 848 F.2d at 644 (plaintiff bears the burden in ADEA cases).

15. Under Fifth Circuit law, equitable tolling applies in the following situations:

(a) during the pendency of an action before a state court that has jurisdiction over the subject matter of the suit, but that is the wrong forum under state law;

(b) until the claimant knows or should know the facts giving rise to her claim; or

(c) when the EEOC misleads the claimant about the nature of her rights.

*Hood,* 168 F.3d at 232 and *Blumberg,* 848 F.2d at 644

16. In addition to the factors delineated above, the courts take into account other circumstances when equitable tolling may be appropriate. *Hood,* 168 F.3d at 232. Several courts have tolled the time limits in instances where the EEOC failed to maintain its own records.[1]

---

1. *See* the following unpublished opinions; *McGarrah v. Kmart Corp.,* No. 3:97–CV–2386–G, 1999 WL 455716, at *3 (N.D.Tex. July 2, 1999); *see also Ricciardi v. Consolidated Rail Corp.,* No. CIV.A. 98–3420, 1999 WL 77253, at *5 (E.D.Pa. Feb. 8, 1999) and *Johnson v. C*

17. Locke sent in her discrimination forms and affidavits to the EEOC before the time limits for the ADEA and Title VII had expired. However, the Charge was not prepared within the proscribed 300 days of the alleged acts of discrimination. Nevertheless, based on the confusion with the EEOC concerning Locke's original record sent in May 1998, and the diligence of Locke's counsel in sending in the appropriate forms immediately upon learning that the EEOC had no record of Ms. Locke's claim before the 300 days expired, the Court holds that the time limit for the EEOC charge should be tolled and Locke's Charge is deemed as timely filed.

### Burden of Proof

■ 18. Both Title VII and the ADEA have the same evidentiary procedures for allocating the burden of proof in discrimination claims. *Brown v. Bunge Corp.*, 207 F.3d 776, 781 (5th Cir.2000).

■ 19. The burden is on the plaintiff to establish a prima facie case of discrimination. *Brown*, 207 F.3d at 781. Therefore, in this case, Locke must prove that she was:

(a) a member of a protected class;

(b) qualified for the pumper position with Coho [2];

(c) denied the position;

(d) and the position was given to a person who was not a member of the protected class [3].

*See Brown*, 207 F.3d at 781; *see also Cardinal Towing & Auto Repair, Inc. v. City of Bedford, Texas*, 180 F.3d 686, 697 (5th Cir.1999).

20. In addition, to the factors above, the ADEA requires a showing that Locke was:

(a) replaced by someone outside the protected class;

(b) replaced by someone younger; or

(c) otherwise discharged because of her age.[4]

*See Brown*, 207 F.3d at 781.

■ 21. Once the plaintiff establishes a prima facie case, a presumption is created that the employer unlawfully discriminated against her. *Brown*, 207 F.3d at 781 (citing to *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 525, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)).

22. This presumption places on the employer the burden of producing admissible evidence that the challenged employment action was taken for a legitimate, non-discriminatory reason. *Brown*, 207 F.3d at 781 (citing to *Hicks*, 509 U.S. at 507, 113 S.Ct. 2742).

■ 23. If the employer carries its burden of production, the presumption of unlawful discrimination "drops out." The trier of fact then decides the "ultimate question" of whether the Plaintiff has proven that the employer intentionally dis-

---

& L, Inc., No. 95C6381, 1996 WL 308282, at *3 (N.D.Ill. June 6, 1996).

**2.** The Court has doubts that Ms. Locke was wholly qualified for the position she sought based on the testimony offered by Mr. Ruley, on behalf of Coho, who indicated that, unlike Amoco, the position at Coho required Pumpers to perform most if not all of the manual labor necessary to maintain and repair wells and production, water and gas lines. However, for the purpose of carrying her burden to establish a prima facie case and to shift the

burden of production to the Defendant, the Court will assume that she was.

**3.** While this is true, the Court gives little weight to this factor considering that the only other female that applied for the position withdrew her application before the hiring process was completed. Ms. Locke was, therefore, the only female who applied for the position.

**4.** Discharge is not relevant here.

criminated against her. *Brown,* 207 F.3d at 781 (citing to *Hicks,* 509 U.S. at 511, 113 S.Ct. 2742).

**24.** The plaintiff must then have the "full and fair opportunity" to demonstrate that the proffered reason is not the true reason for the employment decision, and that unlawful discrimination was the real reason for the decision. *Brown,* 207 F.3d at 781 (citing to *Hicks,* 509 U.S. at 507–08, 113 S.Ct. 2742).

**25.** To prove that the reason was a pretext for discrimination, the plaintiff must show that the reason was false and that discrimination was the real reason for the employment decision. *Hicks,* 509 U.S. at 515, 113 S.Ct. 2742. "[T]here is nothing unlawful about an employer's basing its hiring decision on subjective criteria, such as the impression an individual makes during an interview." *Byrnie v. Town of Cromwell, Bd. of Educ.,* 243 F.3d 93, 104 (2nd Cir.2001). However, the employer may not use "wholly subjective and unarticulated standards" to evaluate the employee's performance. *Id.* The employer's explanation for its reasons must "be clear and specific in order to afford the employee a full and fair opportunity to demonstrate pretext." *Id* at 105. "Where an employer's explanation, offered in clear and specific terms, 'is reasonably attributable to an honest even though partially subjective evaluation of ... qualifications, no inference of discrimination can be drawn.'" *Id.*

**26.** Having given the claimant, Ms. Locke, the benefit of her having shown a prima facie case of discrimination, the Court now considers the presumption placed on the employer as to its burden of producing admissible evidence that the employee action was taken for a legitimate, non-discriminatory reason. The Court has previously found that based upon the testimony of Mr. Ruley and Mr. Guillory, the actions of Coho were for legitimate, non-discriminatory reasons. There was no intent to discriminate against Ms. Locke, nor did she prove discrimination against her.

27. Locke had a full and fair opportunity to demonstrate that the proffered reasons by Coho were not the true reasons for the employment decision. In effect, Locke had the burden and opportunity to show that Coho's reasons for not hiring her were false, a pretext, and that discrimination was the real reason behind the employment decision. The Court can find no pretext or falsity in the testimony of Mr. Ruley and Mr. Guillory. Mr. Ruley, on behalf of Coho, had legitimate concerns that were clear. Locke did not produce proof of any pretext or falsity on Mr Ruley's part or the part of others at Coho. A separate order will be entered consistent with these findings.